CASE 18—PETITION EQUITY—OCTOBER 8.

# Waters vs. Barral's heirs.

### APPEAL FROM LOUISVILLE CHANCERY COURT.

A lease of real estate made by a man ninety-odd years old, and acquiesced in by his children, who were familiar with all the circumstances for years before his death, and also acquiesced in by them as administrators of his estate for years after his death, will not be disturbed or set aside wholly on account of imbecility of the lessor or inadequacy of price.

WORTHINGTON & JOYES,                     For Appellant

CITED—

1 *J. J. Marsh.*, 236 ; *Breckinridge vs. Ormsby.*

4 *Greenleaf's Cruise,* 70, *title* 32, *chap.* 5, *sec.* 76.

*Taylor on Landlord and Tenant, secs.* 22 *and* 92.

2 *Parsons on Contracts* (5*th ed.*), *book* 3, *part* 2, *chap.* 4, *sec.* 4, *notes q and r.*

*Willard's Equity,* 196, 201–2–3.

4 *Cowen,* 207 ; *Jackson vs. Caldwell.*

21 *Wendell,* 142 ; *Odell vs. Buck.*

26 *Wendell,* 298, *et seq.* ; *Stewart vs. Lispenard.*

1 *Paige,* 171 ; *Clark vs. Fisher.*

3 *Denio,* 37 ; *Blanchard vs. Nestle.*

*Shelford on Lunacy,* 39.

*Story's Equity, secs.* 221, 238.

*Fonblanque's Equity, book* 1, *chap.* 2, *sec.* 3.

1 *B. M.*, 244–7–8 ; *Prather vs. Naylor.*

9 *Gratt.,* 332 ; *Greer vs. Greer.*

25 *N. Y.,* 29 ; *Delafield vs. Parrish.*

*Redfield on Wills, chap.* 4.

5 *Dana,* 182 (*note*) ; *Cruise vs. Christopher.*

2 *Johns. Chy.*, 23 ; *Osgood vs. Franklin.*
1 *Vern.*, 141 ; *Batty vs. Lloyd.*

JUDGE WILLIAMS DELIVERED THE OPINION OF THE COURT:

The decedent, C. Barral, died in the year 1863, at the advanced age of ninety-odd years. Early in October, 1861, he leased his three houses and lots on Fourth street, in the city of Louisville, to Thomas G. Waters, for the term of thirteen years ; also, assigned or leased him the ground rents for three other lots for the same term, or so long as the ground rents should continue, a part of which expired in 1864. The consideration for this lease was eight hundred dollars, to be paid annually.

At the time of making this lease Barral was infirm of body and mind; sceptical and superstitious; eyesight dim and hearing bad. Waters had been his agent in leasing and collecting the rents for this property for some six years, and he seemed to have much confidence in him. The decedent, Barral, then lived with his son, C. H. Barral, in Bullitt county. Waters lived in the city.

The clerk of the county court of Bullitt went to the house of C. H. Barral to take C. Barral's acknowledgment of the lease October 9th, 1861, and took it in presence of C. H. Barral's wife and a young lady then visiting the family.

Waters had handed him the lease in Shepherdsville, and requested him to get the acknowledgment, but was not present at Barral's house when it was taken. The clerk states that C. Barral was so hard of hearing that he could not make him understand the lease by reading it to him; told him, however, who he was, and what the object of his visit, and handed the lease to him. Barral looked at his signature and said it was all right, and thereupon he certified the acknowledgment.

C. H. and J. Barral were sons of the lessor, and in daily communication with him. He lived with the one, and the other was a near neighbor, and both knew of this lease at the time, or very soon after its making. Waters paid Barral five hundred dollars the day the lease was made, and 6th of the following August paid him the remaining three hundred dollars, for the first year's rent, the receipt for which is signed " C. Barral, by C. H. Barral."

June 13, 1862, C. Barral gave an order to Samuels for one hundred dollars on Waters, which is witnessed by C. H. Barral.

March 3, 1863, C. Barral, by C. H. Barral, drew an order on Waters for fifty dollars in favor of B. Samuels.

October 8, 1864, after the old man's death, and the taking out letters of administration by J. M. and C. H. Barral, they received eight hundred dollars " in full of rents to October 1, 1864," and signed their names as administrators.

October 1, 1865, they again, as administrators, received eight hundred dollars, and receipted in full for rents up to date.

After this recognition by the lessor and his sons, then about him, for several years, the acceptance of the benefits of the lease during all the troublous and dangerous period of the war, it should take satisfactory proof of weakness of intellect, connected with inadequacy of consideration, or concealment, or fraud, or overreaching of some sort, before the courts should annul a contract so made and acted on for so long a period.

It may be remarked, that in all this case there is not even the semblance of proof of concealment by Waters, misrepresentation, or fraud of any kind. He was not present when the clerk took the acknowledgment, but

the lessor was then surrounded by his sons and his family, and no secrecy seems to have been attempted or desired by Waters or the clerk.

There is nothing to show that Waters had concealed from the decedent the amount for which the property had rented for several years previous; indeed, it is almost certain that he was well informed on this subject; also, that his sons must likewise have known it.

The war was then just beginning to be flagrant; its effects were wholly uncertain; the most sagacious differed, and none were confident. Waters undertook all expenses and street improvement, taxes, &c. The fact that the rents afterwards largely enhanced is no proof of inadequacy at the date of the contract. Neither is the fact that Waters rented the property the first year for about one thousand six hundred dollars, out of which near three hundred and fifty dollars of expenses had to be paid, under the circumstance of this case, evidence of either inadequacy of consideration, concealment, or unfairness; and when his commissions, which would have amounted to eighty dollars, is deducted, the remainder of profit would not perhaps be an unreasonable compensation for the hazard of losing rents by failure of tenants and the dangers of the war. It seems that near one hundred dollars of this year's rent was lost by failure of a tenant.

None of C. Barral's children or friends seem to have regarded his imbecility of such a character as to require the interposition of the courts. He retained the entire control of his estate and pecuniary affairs up to his death; and even then his administrators acted on this lease, and received the rents until the war closed.

There is not such imbecility of mind as to render the contract void by reason alone thereof. There is not such inadequacy of consideration, when all the facts and cir-

cumstances are considered, as to raise the presumption of actual fraud, overreaching, or unfairness.

There is no concealment of facts which a party sustaining the relation of agent is bound to make known to his principal, in order that a contract between them may be regarded as fair.

The leasing of this property terminated the agency of Waters; and so far as the evidence develops the transaction, it was open and fair on the part of Waters, and not made by Barral in ignorance of the value of the property, his rights, or any essential fact.

It may be regarded as an ordinarily prudent transaction under all the circumstances, and having been acted on by the lessor until his death, with the knowledge of several of his children, and still acted on and recognized by his administrators after his death, without complaint or dissatisfaction by either the lessor or his children until the close of the war, when the danger was over, and the situation favorable to an increase of rents, it would seem unjust to set aside the contract.

Wherefore, the judgment is reversed, with directions to dismiss the petition absolutely.