No. 8425.

MARTIN KEOUGH, ET AL. vs. COLBERT W. FOREMAN.

In a suit to set aside a settlement of partnership, on the ground that the same was based on error, an appointment of auditors of accounts by the court is proper to determine whether there have been in the settlement such errors as alleged; and Defendant, in moving to homologate the report of the auditors, waives no right of maintaining the original settle-ment.

A long settled account will not be opened and disturbed unless upon clear and positive evi-
dence that the settlement was made in error of material facts or by fraud or undue influ-
ence.

If there were error in the settlement, but the same resulted from the gross negligence of the
party complaining, he is not entitled to relief.

The fact that one of the parties to the settlement was addicted to drunkenness, will not
invalidate the agreement, when it is not proved that the other party took advantage of a
moment of intoxication.

Settlements are contracts.

APPEAL from the Thirteenth Judicial District Court, parish of St.
Landry. *Hudspeth*, J.

Transferred to New Orleans by consent of parties.

---

*Lewis & Bro.* for Plaintiffs and Appellants :

A motion to homologate the report of experts, binds the mover to its correctness.

It is a judicial admission which he cannot withdraw, after the other party has accepted the
issue so tendered. Gridley vs. Connor, 4 An. 416; Del Bondio vs. N. O. Mutual Insurance
Association, 28 An. 139; Bender vs. Belknap, 23 An. 764.

In an action of settlement of a partnership, the managing partner and cashier must be
charged, in his cash account, for all moneys received for the firm and credited with all
moneys paid out for the firm; and if it appears upon balancing the cash account that he
has paid out more than he has received, the firm must reimburse him.

*John E. King* and *F. F. Perrodin* for Defendant and Appellee.

---

The opinion of the Court was delivered by

FENNER, J. The plaintiffs are heirs at law of Patrick Keough, who
died in 1871. From 1867 to June, 1870, Patrick Keough was engaged in
a planting and commercial partnership with the defendant, C. W. Fore-
man ; Keough was the manager, bookkeeper and cashier of the com-
mercial part of the business, which was that of a country store, while
Foreman conducted the planting business.

Being desirous of dissolving and settling up their partnership, in
1870, each partner selected a friend, to act together, as experts, in post-
ing the books, taking off a balance sheet, and making a statement of
partnership assets and liabilities and of the accounts between the
partners, as a basis for settlement. Keough chose Thos. J. Sloan, and
Foreman chose C. C. Duson. These gentlemen received from the part-
ners the books, memoranda and papers of the firm, and proceeded to
post the books and ascertain the assets and liabilities. They consumed
several weeks in their task, during which they had all needed confer-
ences with the partners, and finally submitted the result of their labors
to the parties. After a cursory examination of the experts' report, the
partners agreed to accept it as correct, and proceeded immediately, on
the very same day, to make a division in kind of the notes, accounts

and other assets. There remained, under the settlement, a cash balance of about $350, due by Keough to Foreman, which the former then and there paid in cash; and both parties expressed themselves satisfied with the settlement. Keough died in the year following, and up to the time of his death he and Foreman remained friends, and he never, directly or indirectly, intimated to Foreman any dissatisfaction with the settlement. After the settlement, the books and papers of the partnership remained in the possession of Keough, and, at his death, passed into the hands of his widow, who qualified as administratrix of his succession, and so remained until they were transferred to the heirs, the present plaintiffs, one of whom, Richard Keough, resided in the parish of St. Landry from about the time of Keough's death. After being in possession of these documents for seven or eight years, he and his co-heirs commenced proceedings to open this account only in 1878.

The first suit was brought simply for an account, which was resisted by Foreman on the ground of prior settlement. That suit was thereupon voluntarily discontinued, and the present action was brought to annul the settlement, on the ground of errors alleged specifically, and to have a new and corrected account taken, and praying for the appointment of auditors for that purpose. To this suit defendant filed an exception that plaintiffs were estopped from alleging that there had been a settlement by their judicial allegations in their former suit that there had been no settlement. The District Court sustained the exception; but on appeal this Court reversed the judgment and remanded the case.

Defendant then filed his answer, embracing a general denial, and then setting up specially that there had been a final settlement years ago, during the lifetime of the deceased, which was satisfactory to both parties; and, therefore, praying that plaintiffs' suit be dismissed.

The court, thereafter, in compliance with the prayer of plaintiffs' petition, appointed auditors "to examine the accounts of the firm of Keough & Foreman, and to state the same," etc.

These auditors, representing to the court that "their labors had been very arduous, extending through more than a month and embracing a number of complicated books and accounts, besides the examination of witnesses," presented their report, which exhibited a result not substantially different from the settlement which had been made between the parties themselves.

The defendant moved to homologate the report. Plaintiffs filed opposition to its homologation. The case was tried, and the District Judge found, as stated in his reasons, that the auditors' report was correct, and that "in its result it agrees substantially with the report of the experts who assisted in the settlement made by the partners in

1870." He also found " from the said report, and from all the evidence, that the said settlement, made in 1870, was a final and definitive settlement between the partners, ·    *    *    and that no errors had been shown to justify its disturbance." He, therefore, rendered judgment " that the auditors' report be homologated, that the said settlement, made in 1870, be recognized as final and definitive, and the suit be dismissed at plaintiffs' costs."

From this judgment the defendant appealed, and at our term of 1880 we remanded the cause for further proceedings, on the ground of certain rulings of the court excluding evidence offered by the plaintiffs, which we held to have been improperly excluded.

This lengthy recital of former proceedings herein has been given because plaintiffs strenuously contend that, by the effect thereof, both the defendant and the court are precluded from urging or considering objections to the opening of the original settlement, but must be confined to issues growing out of the auditors' report and the opposition thereto.

We cannot sustain the correctness of this position. This being an action to set aside an acknowledged settlement, on the ground of error, of course the defendant could not set up the settlement, by way of exception, in bar of the action. He was compelled to set up its finality and fairness, as he has done, as a special defense, in his answer. It went, with his general denial, to the merits, and was only to be determined upon the merits. He could not prevent the appointment of auditors by the court, nor the reception of evidence tending to establish the errors alleged. This was a proper order, in such a case—the object being two-fold, to determine whether there were such errors as justified the opening of the settlement, and, if so, to present the basis of a new account. When the auditors made their report, which substantially sustained the original settlement, at least in its result, defendant waived no right by moving to have it homologated, the effect of such homologation being to maintain the original settlement. Nor did we, in remanding the case, for the reception of evidence improperly excluded, conclude any right of any party to the cause on the final determination of the entire merits.

Such was the view taken by the District Judge, who concluded that the settlement made between the parties should not be disturbed, and rendered judgment dismissing the suit.

The following views, expressed by Chief Justice Marshall, command the ready assent of the legal mind :

" It is the right of every individual to exercise his own judgment on his own affairs, and to arrange them in such manner as his own will may dictate. Where this arrangement is made under the fair exercise

of judgment, without imposition, and with a requisite knowledge of the subject, it is certainly conclusive, unless the arrangement be in its nature alterable at the will of the person who has made it. It is a necessary consequence of this right, that an individual who has settled his accounts with another, and arranged the transactions between them, in a manner which receives the full and free assent of his mind, has a right to consider those transactions closed, and is consequently bound so to consider them. That which might before have been a matter of controversy, is adjusted by mutual consent; and claims which might have been uncertain; are reduced to certainty. It is no objection to this adjustment that some sacrifice may have been made. The party had a right to make the sacrifice. He had a right to balance in his own mind the advantages of the settlement against its disadvantages ; and if, in his judgment, the former preponderated, no other individual has a right to say that he was mistaken, and that, therefore, transactions which he had closed shall remain open." Brydie's Ex'r vs. Miller, 1 Brock. 149.

Settlements are contracts, and they partake, in some measure, also of the nature of compromises. Like all other contracts, they may unquestionably be invalidated on the ground of error of fact. But what is error of fact? In the language of our Code, "that is called error of fact which proceeds either from ignorance of that which really exists, or from a mistaken belief in the existence of that which has none." C. C. Art. 1821.

To disturb a settlement of accounts, it is, therefore, not sufficient to show that debits were allowed which a party might perhaps have legally resisted, or that credits were excluded which might perhaps have been legally claimed. It is fundamentally necessary to show that the party complaining was ignorant of these facts, and that, if he had known them, his consent would have been withheld.

In this case, the party in whose behalf complaint is made, and also the friend whom he selected as his expert in the settlement, are both dead. Positive proof of ignorance is, therefore, impossible. If they were alive, it might be that they would prove such ignorance, but, as was said by Chief Justice Parker, in a like case, "for aught now to be known, if they were alive, they would discountenance any attempt to vacate the settlement made by them." Farnam vs. Brooks, 9 Pick. 237.

Doubtful, or even probable, testimony is not sufficient to open a long-settled account, in absence of proof of fraud or undue influence. McIntyre vs. Warren, 3 Abb. App. Dec. 99.

The proof must be such as to leave no doubt of the party's ignorance. Where the subject-matter of the settlement lay peculiarly within the knowledge of the party in whose behalf complaint is made ; where he had better means of knowledge and of understanding the details

than any other person ; where the business to be settled had been managed exclusively by him ; where the books, accounts and papers which formed the basis of the settlement were all kept and written by himself ; and where, far from being deceived or imposed upon, he had, in these respects, every possible advantage over his co-partner, who was comparatively ignorant of the matters involved, it is fair to presume that he could not, without the grossest negligence, have been ignorant of the entire meaning and scope of the settlement, and that his assent to it was not given without a full understanding of it. *Facti ignorantia ita demum cuique non nocet, si non ei summa negligentiâ objiciatur.* Dig. lib. 22, til. 6, 1. 9.

The converse is true that where the error could only result from the grossest negligence, the party must bear the consequences.

Such is the doctrine of English equity. " Though a court of equity will relieve against mistake, it will not assist a man whose condition is attributable to that want of due diligence which may be fairly expected from a reasonable person." Kerr on Fraud and Mistake, p. 407 ; 3 Jones Eq. 178.

Where the means of inquiry are equally open to both parties, if a mistake occur without any fraud or falsehood, no relief can be granted on account of mistake alone. Western vs. Babcock, 8 Met. 346 ; 1 Wood and Min. 138 ; 4 Md. Ch. 335 ; 5 R. I. 130 ; 8 Geo. 546 ; Kerr on F. and M. p. 434.

How much stronger the case where the party complaining had infinitely the best means of knowledge and of inquiry !

When the report of the experts, selected by himself and his co-partner, was presented to them, Patrick Keough either examined it or he did not.. If he examined it, he was better qualified than any other person to understand it and to detect errors, and if he thereafter consented to settle by it, we must presume he did so with full knowledge and understanding of its contents. If, on the other hand, he agreed to settle without examining it, he was certainly guilty of the grossest negligence, which would preclude him from relief, in absence of any proof of fraud by either his co-partner or the experts. See numerous authorities, from both the Civil and Common law, quoted in argument in Hauer vs. Foster, 9 Pick. pp. 119, 120.

Under the evidence the most probable solution appears to be that both parties, having confidence in the experts, agreed, when the report was presented to them, to accept it and settle by it, without examination. If so, this amounted to a waiver of inquiry, which would preclude relief against error unaccompanied by fraud. Kerr on F. and M. p. 415.

In such a case, the waiver of inquiry by one party would be the consideration of the like waiver by the other.

Keough et al. vs. Foreman.

In the instant case, every element concurs which, in the view of equity courts, influences against the opening of settlements, such as death of parties, lapse of time, absence of fraud, superior knowledge of subject-matter by party complaining, gross negligence, and waiver of inquiry. Extensive research has failed to discover any precedent for the opening of a settlement between parties situated as these parties were, and surrounded by so many circumstances tending to its support. See 2 Barb. N. Y. 586 ; 2 Strobh (S. C.) Eq. 250 ; 66 Mo. 603 ; 3 Brews. (Penn.) 270 ; Watson vs. Bank, 22 An. 14 ; White vs. Gaines, 27 An. 76.

Attempt is made to strengthen the case of plaintiffs by an attempt to prove that, at the time of the settlement, Patrick Keough was incapacitated, by the effects of hard drinking, from intelligently making the same.

No degree of physical or mental imbecility, which leaves the party's legal competency to act, is sufficient to avoid a contract or settlement with him. Farnam vs. Brooks, 9 Pick. 212.

Mere weakness of mind alone, in absence of imposition or fraud, forms no ground of avoidance. 1 Bland (Md.) 370 ; 2 Bush (Ky.) 598 ; 1 Treadw. (S. C.) 448 ; 3 Edw. (N. Y.) 36 ; 2 Ired. Eq. (N. C.) 456.

The fact that a man possessed of reason and the power of reflection, is frequently and even daily intoxicated, will not invalidate a contract by him, with a person who is not proved to have taken advantage of a period of intoxication. 2 Har. and J. (Md.) 421.

The evidence establishes that Keough was a hard drinker, but there is no sufficient proof that the habit had, at the date of this settlement, incapacitated him from attending to business, and it is fully proved that he was sober and in possession of all his faculties at the time of the settlement.

In conclusion, we would say that, even if some of the powerful objections to the annulling of this settlement were wanting, the errors complained of and the evidence in their support are of a character which leave our minds in grave doubt as to whether the settlement attacked may not have been, intrinsically, a just and fair one. The surcharges and falsifications claimed might well be explained or counterbalanced upon not unreasonable theories, as exhibited in the able opinion of the judge *a quo.*

Judgment affirmed at cost of appellants.

---

## DISSENTING OPINION.

TODD, J. Having made a thorough examination of all the evidence bearing upon the parnership settlement of Keough & Foreman, and that evidence being the identical evidence which was before the experts

selected by the parties to make the settlement, and subsequently placed before the auditors, I am entirely satisfied that. both the experts and auditors made serious mistakes to the prejudice of Keough in their respective reports. In point of fact, it is clear to my mind, as clear as an arithmetical calculation can make it, that at the dissolution of the partnership of Keough & Foreman, instead of Keough owing Foreman the amount or balance reported by the experts, Foreman was at the time indebted to Keough in a much larger sum. My conclusion on this point would not be so positive were it not that the same evidence—all the sources of information—were before me, and examined by me, upon which the previous investigations were had and reports made. I have commenced at the same starting point where the experts began, traveled with them over the same sources of investigation, and reviewed their methods and calculations, and have discovered their errors, some of which are, indeed, apparent on the very face of their report. Being firmly convinced, as a matter of fact, that the experts made serious mistakes, and presented to the parties an incorrect statement and a false balance touching their partnership affairs and liabilities, and that in accordance with such statement Keough paid to Foreman something that he really did not owe him, under the belief that the settlement was just and that he did owe the balance thus paid; in other words, being fully satisfied that the experts were in error in reporting a balance against Keough, and Keough equally in error in paying that incorrect balance, I cannot yield, in the face of such conviction of fact, to the legal propositions advanced in the majority opinion, by the effect of which, as construed, a court of justice is powerless to correct the error and right the party wronged by it, even under circumstances as viewed and detailed in that opinion. If Keough and Foreman had made the settlement themselves without the help or interposition of third persons, and in that settlement a grave error had been committed to the prejudice of either party, I cannot doubt but that the party injured would have the right to correct the error, and if he failed to do it in his lifetime, or even to discover it, that his right of action to do so would survive to his heirs or legal representatives. And I cannot see that it would make the slightest difference if, instead of making the settlement themselves, they accepted a false or erroneous plan of settlement prepared by others, and a plan false and erroneous through the mistakes and blunders of these agents. In both cases we must presume that the parties made or accepted the settlement, and carried it out under the honest belief that the settlement was just and correct. If that belief was unfounded, and the plan of settlement in truth was vicious and unjust, then, in either case, the act of making the settlement, or accepting that made by others, was done "from a mistaken belief in the existence of that which had

none," and thus fills literally the textual definition of error under the article of the Code quoted in the majority opinion—C. C. 1821. I fail to recognize the distinction between settlements made, even in the manner this was made, and other kinds of contracts, conventions and agreements. They are all equally subject to impeachment and attack on account of fraud or error, and equally vitiated by such causes. Nor do I see that confidence and absolute trust in the honesty and skill of those employed to make a partnership settlement and a prompt and ready acceptance of the plan of settlement growing out of such confidence, impairs or detracts from the right of a party injured by it to make complaint, nor can such acceptance, in my opinion, be reasonably styled negligence on the part of one possessing or exercising such faith and placing such reliance on others, and a negligence, too, so grave as to deprive a party of all right of action on the ground of error. The vital question after all, in all such matters, is, whether the error exists ; and to me it seems of little import whether a party fell into that error from an excessive or blin l confidence in his own judgment and skill, or in that of others employed by him. It does not seem to me sufficient cause for a charge of fault or negligence in either case, or in any manner affects the principle which invalidates agreements on account of error or impairs the right of action respecting the same. I believe all the above propostions are fully sustained by authority. C. C. 1881, 1882; 6 L. 204, 711; 9 R. 119; 11 An. 639; 1 Brock, 147; 3 Watts & S. (Pa.) 109; 18 N. Y. 285; 10 Humph. (Tenn) 238; 37 Ill., 512; 17 Ver. 615.

There is another circumstance, I must confess, that has had considerable weight with me on this point. I am satisfied from the evidence that, at the time this settlement was made and accepted, Keough from habitual drunkenness of long standing accompanied, at times, with attacks of *delirium tremens*, was utterly incapacitated from making an examination of the statement in the plan of settlement, or of the accounts on which it was based, or of giving an intelligent, legal or valid consent to the transaction. He was in my view of the evidence, a mental wreck at the time, and so remained until his death—though there was no design on the part of the defendant or the parties making the settlement to practice on his weakness. They were all alike in error. The papers prepared by the experts for this settlement, on the face of them, afford to my mind evidence of the incapacity of Keough in accepting them. A business man or an accountant—as Keough was claimed to be—might have easily discovered from an inspection of the papers, some at least, the gross errors they contained.

There is another view of this case which in my opinion renders the reasoning on the subject of the effect of this settlement and touching the right to reopen it—to which the majority opinion is mainly confined

—out of place, and unnecessary to a proper determination of the case. It is this : The suit is to annul a partnership settlement. The petition contained a prayer for the appointment of auditors. The court appointed the auditors, it must be presumed with the tacit consent of the defendant, as he did not oppose the appointment. The order of the judge, directing the duties of the auditors, did not confine them to a review or re-examination of the previous settlement to ascertain whether it was correct or not, but required them to investigate the account of the partnership and report a new settlement of the same as if the action was exclusively for the settlement of the partnership, as will be seen from the order, which is as follows :

" Auditors be appointed to examine the accounts of Patrick Keough and Culbert W. Foreman with each other, and in connection with the firm of Keough & Foreman, and to state the accounts with precision and minuteness, so as to enable the Court to judge whether said auditors act properly in rejecting the articles in the account. It is further ordered that the books, papers, accounts, documents, in the said cause be placed in the possession of the said auditors, and C. C. Swayze having been chosen by plaintiffs, and Edward P. Veazie having been chosen by the defendants, are appointed as said auditors; and it is further ordered that P. J. Lefebvre be appointed to act as umpire, in case the two should not agree,    *    *    *    *    *    and that they make their report on or before the next term of court."

No reference is made in that order to the previous settlement. It seems to me, if defendant or his counsel had entertained the views shown in the reasoning of the majority opinion regarding the immunity of the previous settlement, and its finality and conclusiveness from the facts attending it and so construed their rights with reference thereto, that they would have opposed any inquiry into the partnership accounts and insisted that the entire subject was closed and sealed by the previous settlement, and objected to the appointment of the auditors, and especially to the scope of the order defining their powers, and continued their opposition by objecting to the report when made or returned into court by the auditors. Instead of doing so, however, they tacitly acquiesced in the order as stated, and when the report was made, which really was, and purported to be, a settlement of the partnership, and in no manner based upon or even alluding to the previous settlement, so far from moving its rejection and standing on the old settlement attacked and insisting on an immunity for it, they moved the adoption of the report.

The plaintiffs filed their opposition to the report, and the entire proceeding and evidence in the lower court was confined and narrowed down to the correctness *vel non* of the report. Whatever might have

been the character of the action of the defence originally, they were supplanted and fixed by these subsequent acts and pleadings; and the question of the facts relating to this partnership and its settlement, raised in part by the acts and pleadings of the defendant, was thus thrust upon the court, which could only thereafter legitimately direct its attention to the ascertainment whether this auditors' report was correct or not. This really remained as the main, if not the sole, matter of inquiry under the pleadings, and was the real issue tried in the court below. I have devoted my attention assiduously to that inquiry, and would never have departed from it except to follow the tone of reasoning adopted by the majority opinion and the questions raised therein, and the result of it has confirmed me in the opinion above expressed, that Foreman was indebted to Keough, and not Keough to Foreman at the dissolution of the partnership. Of this I have not a doubt, and could state the amount of that indebtedness, but it is unnecessary. The auditors' report is, to some extent, free from the blunders made by the experts, but does contain some material errors which I think should be corrected, and which, if corrected, would show a considerable balance against the defendant instead of one in his favor. A simple inspection of the two reports of the experts and auditors, and of their different and even conflicting methods of computation and statements, should, in my opinion satisfy any one that the similarity of the result reached by each, argues nothing in favor of either, but must be set down as a mere accidental coincidence.

For these reasons, I am constrained to dissent from the conclusions reached by the majority of the Court.