(73 South. 702)

No. 21976.

Succession of SAUVAGE.

(Oct. 30, 1916.   Rehearing Denied Jan. 15, 1917.)

*(Syllabus by the Court.)*

1. WILLS ⬬565(2)—LEGACIES — CONSTRUCTION.

The legacy of a drug store, under the Civil Code of Louisiana (articles 480, 1642), does not include the money, rights, and credits of the concern, and does not make the legatee liable for the debts contracted in the course of its business.
[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1235; Dec. Dig. ⬬565(2).]

2. PRINCIPAL AND AGENT ⬬82—MANDATE—COMPENSATION OF AGENT—PROFITS.

Where the manager of a drug store was employed for a certain monthly salary and one-half of the yearly net profits, sums abstracted by the bookkeeper from time to time should be charged to profit and loss, in a case where both owner and manager participated in the conduct of the business, and both had such implicit confidence in the bookkeeper as to deem an audit or investigation of his books unnecessary.
[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 216–219; Dec. Dig. ⬬82.]

3. WILLS ⬬563—CONSTRUCTION—DEVISES.

An automobile kept in a garage on the residence lot of the deceased is not included in a bequest of the lot, residence thereon, and "all the contents of said residence."
[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1226, 1227; Dec. Dig. ⬬563.]

O'Niell, J., dissenting in part.

Appeal from Civil District Court, Parish of Orleans; Fred D. King, Judge.

In the matter of the succession of G. R. H. Sauvage. Proceeding by Albert J. Laplace, executor, opposed by Mrs. Bertha Frois Lehman, legatee. From the judgment, the legatee appeals. Alma L. Colomb, alleging ownership of certain property, appeals from its award to said Laplace. Amended and affirmed.

Caffery, Quintero & Brumby, of Franklin, and Charles Louque and Lazarus, Michel & Lazarus, all of New Orleans, for appellant Lehman. Michel Provosty, of New Orleans, for appellant Colomb. Charles J. Theard and Dart, Kernan & Dart, all of New Orleans, for appellee.

LAND, J.   The decedent departed this life at his residence in the city of New Orleans on February 18, 1915, leaving a last will in olographic form, of date March 5, 1910.

This will was duly probated, and Albert J. Laplace, a nephew of the decedent, was duly confirmed as executor thereof.

The said testament reads as follows:

"This is my last will and testament.
"I give and bequeath to Mrs. Bertha Frois Lehman the lot forming the corner of Cleveland and Telemachus streets, with the double cottage therein, and the sum of 10,000 dollars.
"If she dies before me, said legacy shall stand in favor of her daughter, Mrs. J. J. Colomb, born Alma Bertha Lehman; and if Mrs. J. J.

Colomb should also die before me, then said legacy shall stand in favor of Mrs. J. J. Colomb's children, namely: Albert Rutherford Colomb and Millard John Colomb.

"I give and bequeath to my nephew, Albert J. Laplace, the American Drug Store, and the lot forming the corner of Canal and Telemachus streets, with residence thereon, and all the contents of said residence. If he dies before me, said legacy shall stand in favor of his wife and daughter, in equal proportions.

"The balance of my estate I give to Mrs. Bertha Frois Lehman; and in her default to her daughter, Mrs. Alma Bertha Colomb; and in default of the said Mrs. Colomb, to Albert Rutherford Colomb and Millard Colomb.

"I appoint Albert J. Laplace, my testamentary executor, with full seisin.

"In his default, I appoint Mr. Chas. J. Theard, with full seisin.

"Written, dated and signed by myself, at New Orleans, this fifth day of March nineteen hundred and ten.     [Signed] G. R. H. Sauvage."

An inventory of all the property of the succession showed an estate appraised at $125,336.68.

In due course the executor, after causing certain property, real and personal, to be sold for the purpose of paying debts, filed his provisional account, which was opposed by Mrs. Lehman, particular and residuary legatee, on various grounds.

This opposition was overruled, with certain exceptions and reservations, and the account was homologated by judgment of the court.

Mrs. Lehman has appealed, Alma L. Colomb, a third person, claiming to be the owner of a certain automobile, has also appealed.

As a basis for the discussion of this case, we make the following extracts from the "reasons for judgment" assigned by our learned brother below:

"The late G. R. H. Sauvage, generally known as Henry Sauvage, died at the age of 67 on February 17, 1915, at the corner of Canal and Telemachus streets, in this city. He was a deaf mute.

"The evidence shows that he was an educated man and a man of means, that he was alert in his business, and that he was interested in all the current events of life. He communicated by the sign language on his fingers to those who could understand him, but more often in writing, in English.

"For many years the deceased resided with his nephew, Albert J. Laplace, in the residence mentioned, where all of his material wants were administered to by Mr. Laplace and his family.

"In the year 1910 Dr. Raymond Sauvage, a brother of the deceased, and a prominent citizen of the city died, leaving among his heirs his brother, Henry Sauvage.

"In the settlement of Dr. Raymond Sauvage's succession Henry Sauvage took over and was allotted the drug store known as 'The American Drug Store,' an establishment which had been founded by the late Dr. Raymond Sauvage, and in which Henry Sauvage was employed for years before his brother's death.

"Henry Sauvage also acquired in the partition of the succession the lot of ground and buildings thereon which had been for years the family residence of the Sauvage-Laplace families, and which continued to be the residence of Mr. Albert J. Laplace and his family.

"This lot is slightly more than a quarter of a square of ground under one fence, with the dwelling house and outbuildings thereon, at the corner of Canal and Telemachus streets, in this city.

"Prior to the inheritance from his brother Henry Sauvage had been a man of limited means.

"It has been proved in this case that Henry Sauvage insisted upon taking over the American Drug Store from his brother's succession, notwithstanding that it was appraised at a price greater than its value.

"As soon as Henry Sauvage came into his inheritance he joined with him and employed as manager of the American Drug Store his nephew Albert J. Laplace, who had been his associate, with Dr. Raymond Sauvage, in the conduct of the drug store.

"Henry Sauvage had for his nephew and his family a sincere affection. This was the situation when on March 5, 1910, Henry Sauvage made his last will and testament. This will, the evidence shows, was the result of conferences with and advice from Mr. Charles J. Theard, whom he had selected as his legal adviser, and who had been for a great many years the family attorney, and who was, besides, his relative and friend.

"The universal legatee, Mrs. Lehman, had also been associated with Henry Sauvage as a clerk when the drug store was owned and run by Dr. Sauvage. When Henry Sauvage became the proprietor of the store she continued as one of his subordinates.

"This will was probated, and immediately thereafter an inventory was taken showing total assets amounting to $125,366.68.

"After the making of the inventory the residuary legatee on whom falls the payment of all debts demanded from Mr. Laplace an amicable audit of the books of the American Drug Store.

This amicable audit was refused, whereupon the residuary legatee obtained from the court a writ of judicial sequestration coupled with a motion for an audit.

"A rule was taken to set aside the judicial sequestration; the court sustained the motion to dissolve the writ, but in the same judgment confirmed the order for an audit of the books of the American Drug Store to be made by Mr. Elkin Moses, a certified public accountant.

"Mr. Moses made an audit of the books and discovered a defalcation by the bookkeeper, Mr. Walter Salaun, of $44,049.70.

"A motion is now made to homologate that report.

"From argument of counsel and the evidence it appears that the report is perfectly satisfactory to all parties, and the rule to homologate the report is made absolute, at the cost of the residuary legatee, Mrs. Lehman, as agreed upon.

"Before proceeding to the sale of the property to pay debts, and before filing an account, the executor petitioned the court, in behalf of themselves and the residuary legatee, Mrs. Lehman, to be put in possession of their legacies of the particular objects; that is to say, the petition in behalf of Mr. Laplace was to put him in possession of the Canal street residence as well as of the drug store, and the petition in behalf of Mrs. Lehman was to put her in possession of the Telemachus street cottages.

"It is not necessary to pass upon these petitions, because the same request and demand is set up in the opposition of Mrs. Lehman to the account filed.

"A judgment, however, was rendered by the court at the request and by the agreement between both parties that they should be put in possession of those particular legacies, reserving the right of Mrs. Lehman to file her opposition to the account.

"Under this judgment Mr. Laplace was put in possession of the American Drug Store and the residence corner of Canal and Telemachus street.

"The delivery of the drug store, the residence, and the property in the rear thereof took out of the succession those items of assets subject under articles 1626 and 1627 of the Civil Code to contribution thereof, if any such be required towards the payment of the debts of the estate.

"The remaining assets in the executor's possession were reduced to cash by him through collections or by sales made under orders of court, and he has filed a provisional account.

"This account is opposed by Mrs. Lehman, and the grounds of her opposition and supplemental opposition are as follows:

"That the legacy of the drug store is a nullity.

"That the legacy of the American Drug Store should be interpreted to mean the legacy of a running business subject to all liabilities of the same, amounting to $56,318.75.

"That the two automobiles are not included in the legacy of the residence, and there was no manual gift of either to Mr. Laplace.

"That there was no contract of employment between Mr. Laplace and Mr. Sauvage for one-half of the profits of the drug store.

"That the notes given are a nullity by the responsibility of Mr. Laplace for the defalcation of Mr. Salaun, amounting to $44,049.70.

"That the residuary legatee questions the genuineness of the notes given by Mr. Sauvage to Mr. Laplace.

"That, if the notes were signed by Mr. Sauvage, they were given without consideration, because during the years for which they were given there was a deficit or defalcation of $44,049.70, and by reason of this it wipes out any net profits pro tanto.

"That an indebtedness of Salaun of $1,000 should have been collected by the executor and accounted for.

"That the residuary legatee should be placed on the account for the legacy of $10,000, or, at most, she should contribute to the deficit with the other legatee.

"By a supplemental opposition it is claimed that certain sums due to the drug store by its customers had not been accounted for by the executor. This has been admitted, and the executor has stated that they would be accounted for on the final account.

"Another point urged in the supplemental opposition was that the taxes for the current year of the death of Mr. Sauvage on the legacies of immovable property should be prorated by the individual legatees of those properties, and not be borne by the mass of the estate. The executor concurred in that contention and stated that it would be the subject of adjustment on the final account.

"From the language of the will and the evidence it is clear that the legacy of the American Drug Store was a legacy of a specific thing—an established drug store, its contents, and its appurtenances necessary for the conduct of the same.

"The legacy did not carry with it the bank account kept by the late proprietor of the said drug store, nor did it carry with it the debts due to him arising out of his administration of the drug store.

"These things are explicitly excepted under article 480 of the Civil Code, which says: "The sale or gift of a house "with all that is in it" does not include the money, nor the credits or other rights, the titles of which may be in the house; all other movable effects are included."

"The legacy of the drug store did not carry with it the obligations due by the drug store. These obligations are debts of the individual owner of the drug store. They are not secured by mortgage upon the drug store, and as ordinary debts of the deceased they become at his death debts of the succession.

"The legacy of the drug store was a legacy of the particular thing, and by article 1642 of the Civil Code the particular legatee is not liable for the debts of a succession. That article says: 'Particular Legatee's Liability for Debts. The legatee by a particular title shall not be liable to the debts of the succession, ex-

cept the reduction of the legacies as is before provided, and except the action of mortgage of the creditors.'

"The mortgage of the creditors referred to in the foregoing article is the only case provided for in the Civil Code where a legacy is subject to the obligation incumbering them, and that is an express provision of the law applicable to immovable property.

"Article 1638 of the Civil Code says: 'If prior to the testament or subsequently, the thing has been mortgaged by the testator for his own debt or for that of another, or if it be burdened with an usufruct, he who is to pay the legacy is not bound to discharge the thing bequeathed of the incumbrance, unless he be required to do it by an express disposition of the testator.'

"In this case the person who has to pay the legacy is the residuary or universal legatee, Mrs. Lehman. If, for instance, the Canal street property had been incumbered by a mortgage under the effect of article 1638, Civil Code, Albert J. Laplace would have had to take the legacy subject to that mortgage, and without recourse to the universal legatee, the heir, or he could renounce the legacy.

"That is the only exception to the universal rule established by the Civil Code, that a particular legatee is not liable for the debts of the succession.

"The only liability of a particular legatee is the action of reduction of the legacies in favor of the forced heirs, and where the legacy is immovable, and also the action of mortgage by the creditor to subject the immovable to the effect of his mortgage.

"There are no Louisiana decisions construing article 1636, Civil Code, but that article is substantially identical with article 1018 of the Code Napoléon, and the French commentators are in absolute accord with the views herein expressed. Baudry, Lacantinerie, vol. 2, Donations Inter vivos and Testaments, p. 289 et seq.; article 1430, C. C.

"The residuary legatee, Mrs. Lehman, claims the two automobiles, a Packard and a Hudson limousine, belonging to the succession. This is a question mainly of fact, and also a question of law.

"It is shown by the evidence of 12 unimpeached witnesses that the Packard was purchased by Mr. Sauvage as a birthday gift to Mr. Laplace. There is no countervailing oral evidence except that of the residuary legatee, Mrs. Lehman, her daughter, Mrs. Colomb, one of the legatees, Walter Provost, the negro chauffeur, and Laura Thom, a negro maid in the employ of Mrs. Colomb.

"The fact that Mr. Sauvage, the deceased, paid the running expenses of this automobile, including the license thereon, that he used it and invited others to use it on occasions, and that his initials were placed on the doors of the automobile, does not destroy the effect of the testimony of the witnesses aforesaid, nor, indeed, are these facts incompatible with the evidence showing the purchase of the automobile by Mr. Sauvage for Mr. Laplace.

"The Packard car is the personal property of Mr. Laplace, acquired by him before the death of Mr. Sauvage.

"The second automobile, the Hudson limousine, was found at Mr. Sauvage's death in the garage which is one of the outbuildings of the residence lately occupied by Mr. Sauvage at the corner of Canal and Telemachus streets.

"Under the will this lot of ground and a residence thereon, and all the contents of the same, are given to Mr. Albert J. Laplace as a particular legacy. The will does not speak in the present tense, but as to the date of death of the testator, and he makes provisions therein for the alternative legacy of the lot in question should the legatee Laplace die before the testator.

"Under the established interpretation of wills, it is always to be considered that a will applies to a date of the death rather than to the date of the execution of the will, unless the will itself contains evidence to the contrary.

"The legacy of the lot of ground and the residence thereon and the contents of the same carries with it everything contained on the lot of ground and the residence. Residence in the sense here used is a definite social and legal definition; it is one's dwelling place and habitation. The dwelling place and habitation of the deceased was this lot of ground and its residence and outhouses and contents of the same which had so existed for about 25 years before his death, and it is clear that he intended to include in the legacy not only title to the naked property, but title to everything in or about the property.

"Under the law the Hudson limousine goes to the legatee of the lot of ground and residence thereon.

"Want of consideration and failure of consideration, both alleged to have arisen out of the defalcations of Walter Salaun, the bookkeeper, and the ignorance of Mr. Sauvage during his lifetime, is pleaded by the residuary legatee against the notes due to and held by Mr. Laplace covering balances of salary due and profits for several years of the American Drug Store and the association between Mr. Sauvage and Mr. Laplace.

"The contract between Mr. Sauvage and Mr. Laplace, which was an agreement by Mr. Sauvage to pay Mr. Laplace, his manager, a stipulated salary of $250 per month and one-half of the profits, is clearly proven by the testimony adduced on the trial.

"The agreement provides for a fixed salary monthly. The balance undrawn from month to month was entered on the books as a debt of Mr. Henry Sauvage. He recognized the debt created by the contract and as shown by the books, and gave his note at the end of the year for the unpaid salary and one-half of the profits.

"The theory advanced in argument by the residuary legatee seeking to make a distinction

between the fixed and drawing salary cannot be allowed in this case, because the act of a live testator is a much better rule to follow than a posthumous theory.

"Sauvage in his lifetime recognized the obligation as to these balances and share of profits, gave his notes therefor, and his legatee cannot controvert the same so far as the consideration is based upon these balances.

"As to the profits incorporated in these notes, Mr. Elkin Moses, the expert, has testified that the business unquestionably made a profit year by year, and the only error of entering the same on the books was against, and not in favor of, Mr. Laplace; that there was more profit made than appears on the books.

"Under the working agreement between Mr. Sauvage and Mr. Laplace established by the evidence of a number of witnesses, Laplace had charge of the outside or working department of the drug store and Sauvage of the inside or financial department.

"They never interfered with each other in the conduct of the several departments, Laplace had nothing to do with the books or with the money or with the checking out of the money or with the verification of the account; in fact, he had no duties nor authority which would take him in contact with that department of the business. They were wholly within and under the control of Mr. Sauvage, both by contract and as Master of the place.

"Mr. Sauvage could neither hear nor speak in his dealings with average people. He had no capacity to be either a salesman or outside manager of the establishment, and he selected in his arrangement with his manager the department in which his eyes and his money sense and knowledge of books made him efficient.

"Where a duty is made by contract and by law upon one person, and his failure to perform that duty involves another in loss or liability, the law will lay the loss not upon the innocent or inactive party, but upon the active party whose duty it was to discover the fraud.

"The fraud in this case was the physical alteration of the books, so crude that the expert says any one devoting any attention whatever to the same could have discovered it.

"It was easy for Mr. Sauvage, if he had performed the duty which it was his duty to do under the circumstances, to have discovered it.

"When Mr. Sauvage permitted his bookkeeper, whose duty was simply that of a bookkeeper, to handle the cash, or whereby by consent or negligence he placed him in contact with the cash, and thereafter failed to follow up the actions of his bookkeeper and discovered fraud committed upon him, he ratified it as a result of his negligence so far as Laplace is concerned; that each year he accepted the reports drawn from the books by his bookkeeper and submitted them to Laplace, together with his note of balance thus struck and established, he made what in law was equivalent to Laplace (?) was the verity and truthfulness of this statement and the reality of the balances struck thereby in his favor.

"Had he exercised due diligence in discovering the fraud which was committed upon him, he would in the month of May, 1912, have discovered the first defalcation without any trouble at all, and the opportunity furnished to the defaulter by his negligence would have been balked, and this question would never have risen.

"By failing to exercise diligence he put Mr. Laplace in the position of believing that he was entitled to the moneys attributed to him in the settlements, and allowed him to continue to work year in and year out thereafter under the belief that his services were being recompensed in accordance with the contract; and neither Sauvage, if alive, nor his heirs succeeding him, nor his universal legatee, can now be heard to say that the obligation neglected by Sauvage, resulting in what will now be a very serious loss to Laplace, cannot be avoided by his failure to do his duty. He would be estopped, if allowed, from taking any such position, and the universal legatee is likewise estopped. Leather Bank v. Morgan, 117 U. S. 96, 6 Sup. Ct. 657, 29 L. Ed. 811; Act 44 of the Legislature of 1912; Keough v. Foreman, 33 La. Ann. 1434.

"Besides, it is universally held that a settlement account closed by a stated account cannot be reopened between the parties thereafter or by other heirs upon the plea of error of material fact where the error was made by one charged with the duty of discovering that error and of knowing the real facts. Negligence under such conditions is equivalent in law to assent and cannot be urged to reopen the situation, particularly one of the nature of that involved in this case.

"The universal legatee opposes the account and contends that her money legacy of $10,000 should be placed on the account, or, at most, that she should contribute to the deficit pro rata with the other legatees. To place her on the account would be of no use, because there is no money with which to pay her. She loses that legacy simply because there are no funds in the estate with which to pay the same.

"What has happened in this case is that under the very terms of the law she has been recognized for her legacy of a particular object, the cottages on Telemachus street, and so has Laplace been recognized for the American Drug Store and the house and its contents on Canal street.

"The article of the Code heretofore cited shows conclusively that, when there are particular legatees and the effects do not suffice to discharge all of them, the legacies of certain specific objects must be first taken out and paid, and the surplus of the effects, if any, are then proportionately divided among the legatees of sums of money.

"It is contended by the universal legatee that the debt of Walter Salaun, evidenced by a note signed by him for $1,000, should have been collected by the executor, and that he was negligent in failing to do so.

"The evidence shows that prompt demand was made after the death of Mr. Sauvage for the payment of the note; that a promise was made by Salaun to pay the same, and that within two months after the death of the testator, Mr. Sauvage, Mr. Salaun, anticipating exposure, which immediately after resulted, committed suicide; that his estate was insolvent, and every effort has been made and is now being made to collect the money out of the estate. There is no force in this opposition.

"For these reasons the provisional account filed by the executor is approved, and the opposition dismissed, except as hereinabove stated in regard to the supplemental opposition in so far as to order the executor in his next account to credit the estate with sums of money collected from the account due to the American Drug Store, and for a settlement of the taxes of the current year of the death of the testator on legacies of immovable property, as stated herein."

We proceed to consider the issues in this case in the order set forth in the original brief filed by counsel for Mrs. Lehman.

[1] 1. "What passed under the legacy contained in the will, giving to A. J. Laplace the American Drug Store."

Counsel, after arguing that this legacy technically conveyed nothing but the unexpired lease of the building and the good will of the business, state that their client advises the court "that it was the intention of the testator to give Laplace the American Drug Store, which he had received from the estate of his brother, and not simply and restrictedly a disposition of the name, good will, and unexpired term of the leased premises where the business of the American Drug Store was conducted."

Counsel further argue that Laplace took the American Drug Store as a "going concern," "as though it were a corporation * * * with its stock of merchandise, with the current accounts due it, the good will, the fixtures, and all that is appurtenant to its conduct and operation. In other words, he is to have all of its assets, and out of its assets pay and discharge, all of the liabilities of the drug store at the date of his acquisition."

Counsel cite in their brief several cases tending to show that the legacy of an entire business, a going concern, which has been kept separate and distinct by the testator, vests in the legatee all the assets of such business and imposes on him the obligation to discharge all of its obligations.

Counsel quote in their brief from In re Lowe (N. Y. Court of Appeals) 206 N. Y. 671, 99 N. E. 722, as follows:

"We concur in the opinion of Justice Spring below, holding that the second provision of the will of Sarah J. Clements, deceased in which she gave, devised, and bequeathed to her daughter, Helen Springer, her printing office and bindery, together with all presses, binding machinery, type, paper on hand, office furniture, and equipment of every nature connected with the said business * * * carried on by the decedent in her lifetime, and that it comprises the bills receivable and money deposited in bank to the credit of the business. But we think that, in giving to her daughter the business, she intended that she should assume and pay the accounts payable amounting to the sum of $7,450.63.

"The order of the Appellate Division * * * should be modified so as to charge the daughter with the amount of such bills, and the decree, as so modified, should be affirmed."

The American Drug Store has been a well-known going concern in the city of New Orleans since its establishment by Dr. Sauvage some years before his death in 1910. As a going concern, the drug store was allotted to Henry Sauvage in the partition of his brother's estate in the same year, and was a going concern at the time of his death, and has been kept a going concern by his legatee, Laplace.

In the inventory of the succession of Henry Sauvage the stock of merchandise and all contents and appurtenances of the American Drug Store, together with the fixtures and good will, were appraised at $35,000.

There also appear on said inventory bank balances to the credit of the "American Drug Store" in the sums of $3,395.85, $3,530.29, $737.75, and $175.93; and the only bank credit in the individual name of the deceased is for the sum of $36.21. It appears from the inventory that $2,291.65 in cash was found

at the residence of the deceased, and that he had on hand some $26,000 in stocks and bonds.

The books of the American Drug Store show that the business was conducted as a separate concern, and that the various sums of money taken out by Henry Sauvage were charged to his account. The evidence shows that he drew a salary for services rendered to the American Drug Store.

The report of Mr. Moses, accountant, shows that the American Drug Store owed about $11,000 for merchandise purchased and $300 for expenses not entered on the books; and the books show, among other liabilities, bills payable, Citizens' Bank, $10,000, and City Bank & Trust Company, $5,000, and among its assets, cash in bank, $9,880.97, cash in registers, $160, ledger accounts, $648, furniture and fixtures, $7,427.30, vehicle account, $400, and good will, $7,177.20, to which must be added the expert's estimate of merchandise on hand, between $21,000 and $22,000. It may be that some of the above items were improperly charged or credited. But this cannot be said of merchandise not paid for.

The doctrine that the legatee of a going business takes the assets free of the debts of the concern was deduced by the judge a quo from the provisions of article 1642 of the Civil Code reading as follows:

"The legatee by a particular title shall not be liable to the debts of the succession, except the reduction of the legacies as is before provided, and except the action of mortgage of the creditors."

Article 1638 of the Civil Code is to the effect that the particular legatee takes the property subject to mortgages imposed by the testator or to an usufruct existing thereon.

That the legacy to Laplace falls within the terms of article 1642 cannot be disputed, as it is a particular legacy of a certain object or objects included within the meaning of the descriptive words the "American Drug Store," which is construed by the decree below not to include the said deposits in bank or the book accounts.

Counsel for Laplace concedes the correctness of the decree in these particulars, citing C. C. art. 480.

While we are much impressed with the equity of the common-law cases cited by counsel for the appellee, we cannot disregard the emphatic declaration of the Civil Code that the legatee under a particular title is not liable for the debts of the succession, except in the cases of contribution and reductions. Articles 1430, 1642.

Under corresponding articles in the Code Napoléon, it is well settled that the above rule applies even to debts contracted by the deceased for the acquisition, the conservation, or amelioration of the thing bequeathed. See Carpentier-Du Saint, Reportoire Du Droit Francais, vol. 26, p. 147, Nos. 1641, 1642.

We may here note that the New York case cited supra gave the legatee all the assets of the business, including rights, credit, and balances in bank.

Hence, if we should adopt the doctrine of that case, we would be bound to hold that Laplace is entitled to the balances in the banks to the credit of the drug store and to the unpaid ledger accounts.

The general rule is that a testament speaks as of the date of the death of the testator. There is nothing in the testament before the court that indicates an intention to bequeath the drug store as it existed at the date of the will.

Such a bequest would have been absurd, as the drug store was a going business, and its assets were changing from day to day.

The first ground of opposition is that the term "American Drug Store" means only the place where the business was conducted, and, as that belonged to a third person, the legacy is null.

We think it is too clear for dispute that

the term was intended to embrace everything connected with the drug business carried on by the deceased.

We therefore are of opinion that the ruling of the judge below as to what was included in the legacy to Laplace is correct.

[2] 2. In his provisional account Laplace appears as a creditor for some $26,000, evidenced by the notes of Henry Sauvage, deceased.

The notes per se are sufficient evidence of the debt. The evidence satisfied the trial judge and satisfies us that the consideration of each of the notes was undrawn salary and one-half of the profits of the business year. That Henry Sauvage signed such notes from year to year, his own books showing the consideration for each note, supports the direct evidence of Laplace that he was employed by Henry Sauvage as manager of the drug store at a monthly salary of $250 and for one-half of the yearly profits of the business.

Laplace, an educated chemist, was employed by Dr. Sauvage, and during the latter's life remained manager of the American Drug Store.

Laplace, after the death of Dr. Sauvage, continued to manage the business for his estate.

When Henry Sauvage in the partition of his brother's succession received the American Drug Store as a part of his portion of the inheritance, he naturally sought to retain Laplace, his near relative and friend, in the management of the business.

Henry Sauvage had been employed in the same store during the life of Dr. Sauvage at a small weekly wage. Mrs. Lehman had also been employed in the same establishment at a good salary. The evidence shows that, outside of business, Henry Sauvage acted very generously towards Laplace, his nephew, and Mrs. Lehman, whom he sought to marry. Laplace testified that Sauvage would have

allowed him any salary or compensation he might have requested.

As to the notes of the deceased in favor of Laplace, the only serious question before the court is the defense of error and want of consideration set up in the opposition of Mrs. Lehman, based on the loss of some $44,000 by reason of defalcations of the bookkeeper of the concern.

The report of Mr. Moses, the public accountant, shows no defalcations affecting the note for $4,909.98, dated July 11, 1911.

The said report shows cash defalcations as follows:

| | |
|---|---|
| For year ending August 30, 1912... | $ 7,607.54 |
| For year ending August 30, 1913... | $12,552.19 |
| For year ending August 30, 1914... | $13,242.17 |
| Between April 30, 1914, and February 15, 1915.................. | $10,647.81 |
| **Total** | **$44,049.70** |

Also amounts credited from year to year to Laplace for his one-half of the profits:

| | |
|---|---|
| April 30, 1911.................. | $3,409.98 |
| April 30, 1912.................. | $3,710.80 |
| April 30, 1913.................. | $4,135.51 |
| April 30, 1914.................. | $3,535.90 |
| **Total** | **$14,788.19** |

Mr. Moses stated in his testimony that the defalcations consisted of abstraction of cash from the American Drug Store, which, if charged against profits, absorbed them, except for the first year.

His report states that the amounts credited as profits for the last four years were based on padded inventories and falsification of the books.

In his testimony Mr. Moses expressed the opinion that the profits were slightly in excess, in three of the years, of the figures on the books, and slightly below in one of the years. But the books have never been corrected and reformed so as to show the actual results.

The large total of the defalcations was made up by the abstractions of cash by the bookkeeper from time to time during the pe-

riod from April 30, 1911, to February 5, 1915. The bookkeeper confessed his crime, but asserted that he had stolen only $16,000 or $17,000.

There is no suggestion in the record that the rest of the money was stolen by any other person.

It is shown, however, by Mr. Moses' report, that the large sum of $44,049.70 was abstracted from the cash receipts of the American Drug Store.

This loss was about equal to the profits of the concern for four years.

Laplace and Henry Sauvage had an equal interest in the profits. The first was the manager, carried a key to the safe, and had access to the books.

The second was the proprietor, who also had a key to the safe, and access to the books.

Sauvage and Salaun, the bookkeeper, who also had a key to the safe, occupied the office in the back part of the store.

The daily cash receipts were carried to the office, and delivered, as a general rule, to Sauvage or Salaun. When Sauvage was absent, which was seldom, Laplace took his place.

Counsel for appellant have charged Laplace with culpable negligence in the employment of Salaun, a man of bad reputation, in not having the books audited, and, in short, in not seeing that the books were properly kept and the receipts of the firm safely deposited in bank.

Counsel for the appellee reply that Laplace's duties consisted in the purchase of drugs and medicines, and in the supervision of the sales department of the store; that he was seldom in the office, and knew nothing of the manner in which the books were kept; that the bookkeeper was a man of good family and reputation; that Laplace had nothing to do with the financial department of the business, which was handled by Sauvage, and Salaun the bookkeeper.

The confession of Salaun implicated no other person, and how his almost daily abstractions of money escaped the attention of Sauvage and his manager is explainable only on the theory of their implicit confidence in Salaun's honesty and integrity.

Salaun falsified the books to conceal his thefts, and there is not the slightest evidence in the record to indicate that Sauvage or Laplace knew anything of Salaun's defalcations.

After a careful consideration of all the evidence in the record, we have reached the conclusion that the failure of Sauvage and Laplace to discover the defalcations of Salaun, the bookkeeper, was due to their blind confidence in his honesty and integrity. Sauvage and Laplace were equally interested in the profits of the business, and if extra diligence was due by either, it was rather from the experienced manager than from the inexperienced proprietor, handicapped as the latter was by congenital infirmities.

The note transaction between the parties commenced at the end of the business year in 1911, during which there had been no defalcations.

The profits of four years having been lost through the dishonesty of the trusted bookkeeper, we see no good reason in law or equity for saddling the whole loss on Sauvage or his estate.

Hence the principal of each of the second, third, and fourth notes must be reduced to the amounts of the unpaid salary therein included.

Laplace was nonsuited on fifth note.

3. "Whether the particular legacy of $10,000 to Mrs. Lehman has' priority over all other legacies and ranks in order of payment next to the debts of the estate."

Counsel for appellant cites Duke of Rich-

mond v. Milne's Executors, 17 La. 320, 36 Am. Dec. 613, where but one particular legacy was contained in the testament.

The question seems to be answered by Civil Code, art. 1635, reading:

"If the effects do not suffice to discharge the particular legacies, the legatee of a certain object must be first taken out. The surplus of the effects must then be proportionally divided among the legatees of sums of money, unless the testator has expressly declared that such a legacy shall be paid in preference to the rest, or that the legacy is given as a recompense for services."

[3] 4. "That the Packard automobile was the property of Mr. Sauvage and constituted a part of his estate."

Laplace does not claim this machine under the will, but as a manual gift. The evidence on this issue is very conflicting, and, as the finding of the trial judge thereon is not clearly erroneous, it should be affirmed. This conclusion disposes of the claim of Mrs. Colomb to the machine.

As to the other automobile, the judge states that it was found at Sauvage's death in the garage, which is one of the outbuildings of the late residence of the deceased.

We think that our learned brother below erred in holding that this machine passed under the legacy to Laplace, when the will in terms restricts the bequest to the lot, residence, and "all the contents of said residence."

It is not probable that Henry Sauvage ever intended to give Laplace both of the costly cars.

The supplemental briefs on both sides have been considered.

It is therefore ordered that the judgment appealed from be amended as follows:

By decreeing that the Hudson automobile is the property of the succession of the deceased.

By reducing the principal of certain notes of the deceased held by Laplace as follows:

Note dated July 6, 1912,..........to $1,196.34
Note dated June 7, 1913,..........to $1,000.00
Note dated April 13, 1914,........to $1,300.00

—without prejudice to said Laplace's rights as holder of note for $10,647.81.

And it is further ordered that said judgment as thus amended be affirmed, costs of the main appeal to be paid by A. J. Laplace, and costs of Mrs. J. J. Colomb's appeal to be paid by her.

SOMMERVILLE, J., takes no part.

O'NIELL, J., dissents from that part of the opinion and decree that holds that the notes given by Sauvage to Laplace for the salary due him are affected by the theft of Sauvage's money by Salaun, and otherwise concurs.