LAND, J'.
 

 Mrs. Frances Caroline Henry departed this life at her domicile in the town of Ruston, Lincoln parish, on the 24th day of January, 1921, and left, as the only living children of decedent, James M. Beckham and Dr. Thomas Ragan, and a number of grandchildren, majors and minors, of two deceased daughters, and a minor great-grandchild of a deceased granddaughter, also survived Mrs. Henry. Decedent instituted her son, James M. Beckham, as her universal legatee, and appointed him executor without bond, and with full seizin of her estate, in a last will and testament, olographic in form and of date April 24, 1914. The testatrix made the following declaration in said will:
 

 “Having had poor health and a frail body for quite a long while, and in constant need of careful attention, and nursing and support, and that duty having fallen on my son, James M. Beckham, with whom I am now living, and have lived years, and expect to live the remaining years' of my life, it is my desire that my said son should be compensated for his labor and affectionate attention to me, and that he
 
 *519
 
 should be repaid the cost and expense that my support has been to him, and, as evidence of my love and affection for him, I make this provision for him. I. therefore will and bequeath to my said son, James M. Beckham, all my property of every kind and character, rights, credits and everything of value that I
 
 may
 
 die possessed of and own, he to have and possess in full ownership.
 

 “While I consider this a poor reward to my said son for his faithful attention to me, and his care and support of me, for so long a time, and as evidencing my love and affection of his dutiful fidelity, it is all I can do, and I do this of my own volition. I have done for the rest of my children what I consider is an equivalent of what would be their portion of my estate as it now is, and I do not consider that I am depriving them of any just right in this disposition of my estate.”
 

 J. M. Beckham alleged in his petition for the probation of the will that the bequest made to him by the testatrix was a remunerative donation, and intended as such in express terms; that decedent had been living with petitioner and his family continuously for a period of nine years; that he had received no compensation for his services rendered for the support, maintenance, nursing, and waiting upon decedent during that time; that said services were well worth the sum of $360 per year, or $3,240; and that said will should stand and be sustained in its entirety, and petitioner should bo recognized as heir and universal legatee of the decedent, and, as such, be sent into possession of the estate.
 

 The probation of the will was opposed by the other heirs on the following grounds:
 

 (1) That the will attached to the petition for probate was not the last will and testament of Mrs. Frances Caroline Henry.
 

 (2)
 
 It was denied that the entire estate of deceased was left to petitioner for valuable services, or that any such services were rendered, or were worth $360 per year.
 

 (3) It was denied that Beckham should receive any compensation for the services he did render, as decedent contributed to the support of Beckham and his family for more than would compensate for any services rendered by him to his mother.
 

 (4) It was denied that the services rendered were worth more than the real estate.
 

 (5) It was denied that said bequest was a remunerative donation or intended as such.
 

 (6) It was alleged that if the will should be proven to be genuine, the donation mortis causa, under article 1403 of the Civil Code, should be reduced to the disposable portion.
 

 The judgment of the lower court recognized the will as genuine, ordered its registry and execution, and permitted J. M. Beckham to qualify as executor without bond.
 

 The bequest in favor of Beckham as universal legatee was reduced to the disposable portion, or one-third of decedent’s estate.
 

 The right was reserved to Beckham to assert claim, if any he had, for payment from the estate for services, board, etc., and to demand collations from the other heirs.
 

 1. “The first and great rule in the exposition of wills, to which all other rules must bend, is, that the intention of the testator, expressed in his will, shall prevail, provided it be consistent with the rules of law. * * * This principle is generally asserted in the construction of every testamentary disposition.” Smith v. Bell, 6 Pet. (31 U. S.) 68, 8 L. Ed. 322; R. C. C. art. 1712.
 

 The plain and unmistakable language of the will excludes any intention on the part of the testatrix to make a donation purely gratuitous. In express terms the testatrix has declared that—
 

 “It is my desire that my son
 
 should he compensated
 
 for his labor and affectionate -attention to me, and that
 
 he should he repaid the cost and expense that my support has heen to him.”
 

 The testatrix has recited in her will the constant need of careful attention during many years, on account of ill health and frail bodily condition. She has avowed the unfailing devotion to her of her son during
 
 *521
 
 all of these years in tenderly nursing .her and in providing for her support. It is true that such language is eloquent of maternal love and gratitude; but, to our minds, it is also the clear expression of a mother’s final wish that the unselfish services of her son should receive, in the end, a just reward and recompense at .her hands. The intention of the testatrix that the bequest made to her son should be a remunerative donation is beyond all question or cavil.
 

 The succession property of the late Mrs. Frances Caroline Henry consisted, as per inventory, of a house and lot in Rustan, Da., appraised at $2,000, and household and kitchen furniture, valued at $40, or a total of $2,-040. The house was in a dilapidated condition, needing considerable repairs, and the inventoried value, according to the testimony in the record, represents a fair valuation of this property. ■
 

 Decedent was 70 years of age when she first made her home with her son and his family. She resided there 9 years, until her death, making occasional visits of short duration to the homes of several of her children.
 

 The services rendered to her by her son and the members of his family were of the most devoted and • unselfish character, as clearly shown by the testimony of the neighbors. Decedent was waited upon, nursed when ill, and furnished with board and room, which was occupied entirely by herself, except at brief intervals. She made no provision for her son’s family, and, at her advanced age and in her frail condition, was incapacitated to render any services in keeping or caring for the home. Her income was meager, consisting of occasional rents from the house she owned and a small pension. Her property was mortgaged for a debt of $500. She used her small income in paying off the mortgage, while living with her son, and in supplying her simple needs as to clothing, medicine, etc.
 

 A conservative estimate for room and board and attention received by decedent during the nine years she resided with her son cannot be fixed justly, in view of the testimony in the case, at less than $300 per annum. Should we deduct even twelve months during the period of her nine years’ residence with her son and his family for occasional visits to the homes of her other children, he would be entitled to $2,400 as compensation for services rendered, or a sum in excess of the value of all the property bequeathed to him by his mother.
 

 2. Opponents to the, will attack the legacy made in this case upon numerous grounds among which is the contention that a remunerative donation cannot be legally made in a last will and testament.
 

 This contention is predicated upon the argument that remunerative «donations appear only under the head of “Donations Inter Vivos,” in chapter 5 of the Civil Code, and are not mentioned under the head of “Dispositions Mortis Causa,” in chapter 6 of the Code.
 

 The premise is. false, and the conclusion drawn from same is wrong, for the reason that remunerative donations appear in the Civil Code also under the head of “Disposable Portion,” and also under the head of “Donations Inter Vivos” (between living persons), and “Donations Mortis Causa” (in prospect of death).
 

 Article 1570, par. 3, under the head of “Dispositions Mortis Causa,” chapter 6, declares:
 

 “Thus an act of last will, hy which an individual disposes of his property or a part thereof, in any manner whatsoever,
 
 whether he has instituted an heir or only named legatees, whether he has or has
 
 not
 
 charged any one with the execution of his last will,
 
 is considered as a testament,
 
 if it be, in other respects, clothed with the formalities required by law.”
 

 «It is clear, therefore, that this article authorizes a testator to make every disposition of his property by. donations mortis, causa
 
 *523
 
 which he could make by donations inter vivos.
 

 The articles of the Civil Code carefully enumerate in chapter 4, under the head “Of Dispositions Reprobated by Law in Donations Inter Vivos and Mortis Causa,” all dispositions in donations inter vivos and donations mortis causa, which, as a general rule, are prohibited by law.
 

 The redactors of the Civil Code embraced these reprobated dispositions in two articles of the Code, articles 1519 and 1520. Article 1519 declares that—
 

 “In all dispositions inter vivos and mortis causa impossible conditions, those which are contrary to the laws or to morals, are reputed not written.”
 

 Article 1520 provides that “substitutions and fidei commissa are and remain prohibited.”
 

 But we fail to find any prohibition against the inclusion of remunerative donations in last wills and testaments under chapter 4 of the Civil Code, “Of Dispositions Reprobated by Law in Donations Inter Vivos and Mortis Causa.”
 

 Under title 2 of the Civil Code, “Of Donations Inter Vivos (between living persons and Mortis Causa (in prospect of death”), and in chapter 2 of said title, under the head “Of the Capacity Necessary for Disposing and Receiving by Donation Inter Vivos or Mortis Causa,” article 1489 is found, and this article declares that—
 

 “Doctors of physic or surgeons, who have professionally attended a person
 
 during the sickness of which he dies,
 
 cannot receive any benefit from donations inter vivos or mortis causa made in their favor by the sick person during that sickness.
 

 “To this, however, there are the following exceptions :
 

 “(1)
 
 Remunerative dispositions
 
 made on a particular account,. regard being had to the means of the disposer and to the services rendered.
 

 “(2) Universal dispositions in case of consanguinity.
 

 “The same rules are observed with regard to ministers of religious worship.”
 

 This article, found under the head “Of Donations Inter Vivos and Mortis Causa,” specifically recognizes that remunerative donations may be made in dispositions mortis causa, as well as in dispositions inter vivos.
 

 As an act of donation inter vivos is made by the Civil Code a legal mode for the making of a remunerative donation, what good reason can be assigned why a testator should not be permitted to discharge his obligations for services rendered through the vehicle of a last will and testament?
 

 The testator is expressly authorized by article 1570 of the Civil Code to dispose of his estate “in any manner whatsoever,” not prohibited by law, and there is no inhibition contained in the Civil Code against remunerative donations being made in dispositions mortis causa.
 

 The right to make a remunerative donation in a last will and testament has passed hitherto unchallenged by both bench and bar in the legal history of this state, although there are numerous decisions recognizing and enforcing such donations in dispositions mortis causa. The clearness of such right under the provisions of the Civil Code is obviously the reason for the absence of attacks of this kind upon bequests of this character.
 

 3. If the value of the services to be recompensed, appreciated in money, should be little inferior to that of the gift, the remunerative donation loses its legal status as a real donation, and, in consequence, the rules peculiar to donations inter vivos do not apply, as in such a ease the remunerative donation becomes a dation en paiement. R. C. C. arts. 1525, 1526; Pothier Traite Du Vente, 607; Semple v. Fletcher, 3 Mart. (N. S.) 382; McGuire v. Amelung, 12 Mart. (O. S.) 649.
 

 It is true that a remunerative donation may be reduced to the value of the services rendered, when the value of the object given exceeds by one-half that of the services. R. C. C. art. 1526.
 

 
 *525
 
 But a remunerative donation cannot be reduced below tbe estimated value of tbe services rendered, if the value of sucb services should be little inferior to that of tbe gift, not even .if such remunerative donation should trench upon the legitime of forced heirs. R. C. C. arts. 1525,1513.
 

 This issue was squarely presented in Succession of Eox, 2 Rob. 292, and in Graves v. Graves, 10 La. Ann. 212. The court in tbe latter case said:
 

 “Some of
 
 the
 
 forced heirs
 
 of
 
 Mrs.
 
 Menor
 
 Graves, deceased, brought this suit to set aside her last will and testament as defective in form and illegal in substance.
 

 “The alleged illegality in the disposing part of her will consists in the bequest of six slaves, Constituting nearly
 
 four-fifths
 
 of the succession, to her son Daniel W. Graves,
 
 thereby depriving her numerous other children of their legitime. The plaintiffs claim that the legacy should, be reduced to the disposable portion.
 

 “But, by the terms of the will,
 
 this is purely a remuneratory donation.
 
 The expressions of the testatrix are ‘for and in consideration of services rendered to me by my son Daniel in attending to my business and taking care of me for some years past,’ ‘for a debt I justly owe. him, the amount of which I consider equivalent to the property bequeathed to him.’
 

 ' ’“The article 1500 of the Civil Code declares that ‘remunerative donations can never be reduced below the estimated value of services rendered.’
 

 “The evidence shows that the services of the legatee to have been of the most meritorious description and not at all inferior in value to the bequest. * *
 

 “On this branch of the case we think there is no error in the verdict and judgment.”
 

 In tbe Succession of Eox, 2 Rob. 292, tbe children of the testator attacked as excessive a remunerative donation contained in tbe last will of their father to bis brother, Bernard Eox, and prayed for the reduction of the bequest to tbe disposable portion.
 

 The court said:
 

 ■ “If a remunerative donation exceed the disposable portion, the donee or legatee is bound to prove the value of his services, and the legacy will be reduced if he do not show that his services are worth the amount bequeathed to him. * * * If the value of his services be equal to, or greater than the bequest, no reduction can be made. Civ. Code, 1500 [R. C. C. art. 1513], 1512 [R. C. C. art. 1525].”
 

 Article 1511 of the Revised Civil Code is to the effect that—
 

 “When
 
 the dispositions mortis eausa
 
 exceed either the disposable quantum or the portion of that quantum that remains after the deduction of the value of the donations inter vivos, the reduction shall be made pro rata, without any distinction between universal dispositions and particular ones.”
 

 Article 1512 provides that—
 

 “Nevertheless, in case the testator has expressly declared that any particular legacy should be paid in preference to the others, that preference shall take place, and the legacy that is the object of it shall not be reduced, if the value of the others does not fall short of the legal reservation.”
 

 Article 1513 (1500) declares that—
 

 “Remunerative donations
 
 can never be reduced below
 
 the estimated value of the services rendered.”
 

 ' These articles appear in the Civil Code under the head “Of the Disposable Portion, and of its Reduction in Case of Excess.”
 

 It is therefore so patent from the lan-. guage of the articles quoted that a remunerative donation is not subject to reduction below tbe value of the services, in determining the disposable portion, and, for this reason, may be carved out of the legitime of forced heirs, that we do not consider any extended discussion of this matter necessary, but, like our predecessors, will content ourselves with a mere citation of these plain and unmistakable provisions of the Civil Code, and tbe additional observation that tbe interest of a forced heir in a succession is purely residuary. If the debts and charges of the succession equal or exceed tbe value of the estate, there is no residuum to be left to forced heirs to be encroached upon as á legitime.
 

 4. The rules relative to donations inter vivos are not applicable to the bequest in
 
 *527
 
 this case, as the value of the services rendered exceed the value of the property included in the universal legacy made by the testatrix to her son.
 

 The bequest is not, therefore, a real donation, but a dation en paiement, the giving by the testatrix of her estate to the universal legatee in payment for his services.
 

 The value of these services has been proven by satisfactory evidence to be in excess of the value of the gift which is not subject, therefore, to reduction, because of the legitimate portion claimed by the forced heirs.
 

 In the case of the Estate of Marie Anne Olivier, Opposition of Joseph Langley et al., 18 La. Ann. 594, the court held that—
 

 “Where one of the children of a deceased parent furnished necessaries for the support of the deceased, and attended to the wants of the parent during sickness and Old age, it furnishes a just charge on the estate of the deceased, and the heirs must contribute to the payment of the charge.”
 

 See, also, Succession of Newton, 33 La. Ann. 621; Succession of Savory, 32 La. Ann. 500.
 

 In the case of Bowlus v. Whatley, 129 La. 509, 56 So. 423, which was a contest over property transferred in the form of a remunerative donation, the court announced the law as follows:
 

 “It can hardly be seriously doubted that the rendition of services creates an obligation; and surely no one would assert that the extinguishment of an obligation is not a legal basis for the transfer of property.”
 

 The services rendered to the testatrix by •her son have been detailed by her in the will, and her obligation to compensate him for these services has been acknowledged, and performed by the testatrix, in making the bequest to him of her estate.
 

 The rights of the son as legatee of the property do not depend upon any contract of compensation with the decedent, or upon any intention on his part to have charged for-his services, while his mother was alive and residing with him.
 

 The legatee is not suing the succession in this case upon any contract, or upon a quantum meruit, for the recovery of the value of his services to the testatrix; but is claiming title to the property bequeathed to him, and which he has acquired by a dation en paiement from the testatrix, the services rendered having created the obligation, and the legal basis for the transfer of the property being the extinguishment of that obligation on the part of the testatrix. The law does not require in a donation, whether gratuitous, remunerative, or onerous, that the value of the thing given, of the services intended to be compensated, or the charges imposed, should be fixed and stated in the act. Hearsey v. Craig, 126 La. 824, 53 So. 17; Bowlus v. Whatley, 129 La. 509, 56 So. 423.
 

 The last will and testament of the late Mrs. Frances Caroline Henry is therefore a legal and valid disposition mortis causa, and must be recognized and enforced as written and intended by the testatrix.
 

 What we have said in this opinion is applicable only to the property now inventoried and involved in this particular case.
 

 For the reasons assigned, the judgment appealed from is affirmed, in so far as it recognizes the genuineness of the last will and testament of the late Mrs. Frances Caroline Henry presented for probate in this case. In all other respects, said judgment is annulled, set aside, and reversed, and it is now ordered that said last will and testament be sustained in its entirety and be probated, registered, and executed as written by the testatrix, in so far as it affects the property now inventoried in the succession of decedent and described as follows:
 

 “A lot of land situated in Ruston, Lincoln parish, Louisiana,- together with all improvements and appurtenances thereunto belonging, described as follows: Starting at the N. E. corner of a lot H. W. Ragan bought of R. E. Russ, as per deed recorded in Deed Book O,
 
 *529
 
 page 89, of the Conveyance Records of Lincoln Parish, La., and running from the aforesaid starting point S. 275 feet along the extension of Vienna street, and then a little north of west to the aforesaid S. AV. corner. Less two lots described as follows: A lot starting at the N. AY. corner of a lot of H. AV. Ragan and running south, along Trenton street extended, 84 feet, thence east 140 feet, thence south 16 feet, thence east 85 feet, thence north 100 feet to the north line of said lot, thence west 175 feet to place of beginning. Also a lot beginning at a point on the west line of block No. 70 in said town of Ruston, La., 160 feet north of the S. AV. corner of said block, and running north along said west line a distance of 150 feet, thence east 140 feet, thence south 150 feet, and thence west 140 feet, to the point of beginning, appraised at $2,000.00.”
 

 Also:
 

 “Household and kitchen furniture, appraised at $40.00.”
 

 It is further ordered that James M. Beck-ham be recognized as heir and universal legatee of the decedent, and owner in full ownership of all the property inventoried in said succession, and described herein, and that he be sent into possession of the same. It is further ordered that the rights of the other heirs of the testatrix be expressly reserved to participate in the ownership and division of any other effects, if any, belonging to the succession of decedent, which may be discovered hereafter.
 

 O’NIELL, O. J., dissents.