HAMITER, Justice.
On June 28, 1948, at the age of 84 years, Albert Huber died at his domicile in the City of New Orleans. He left a nuncupative will by public act, of date March 20, 1945, which contained the following provisions :
“I will and bequeath to my daughter, Mary Johanna Huber all of my right, title and interest in the residence prop *843 ■erty Nos. 4300-4302 Orleans Avenue in compensation for the services which she has rendered, day and night-to my late wife, to our deceased daughter and to me.
“I bequeath to my said daughter all .my right, title and interest in the furniture and appurtenances in my residence. One set of this furniture already belongs to her.
“In the event that it should be considered that these bequests exceed the value of the services rendered to me by my daughter, then the excess shall be received by my said daughter, Mary Johanna Huber as an extra share in my estate.
“I appoint -my daughter Mary Johanna Huber, Executrix of my estate and detainer of my property without bond.”
Surviving the decedent, besides the daughter named in the will, were other daughters namely, Mrs. Katie Huber LaRocca and Mrs. Edna Huber Chagnard.
The inventory taken in the succession proceedings disclosed that the estate of decedent had' a total value of $8,617.85 and that his interest in the real property bequeathed to Mary Johanna Huber (x%2) was worth $5,843.75.
After qualifying as testamentary executrix, Miss Huber filed a petition to which was attached her first provisional account. She prayed for the approval and homologation of the account and, further, that she be recognized in her individual capacity as the owner, and entitled to possession, of the property willed to her.
A short while later the other daughters • of decedent, Mrs. LaRocca and Mrs. Chagnard, petitioned for the annullment of his last will and testament and also opposed the provisional account. In the petition they charged that (1) the will was not dictated by the testator and written by the notary as it was dictated, (2) the will was executed under duress exerted on' the decedent by their sister, (3) in the alternative, even if the will were valid, the donation to Mary Johanna Huber was excessive and illegal. In opposing the account they alleged that their sister should list rent due and owing by her for that part of the premises Nos. 4300-4302 Orleans Avenue which she occupies.
After hearing evidence on the. allegations made by Mrs. LaRocca and Mrs. Chagnard, the district court rendered a judgment dismissing both their opposition to the account and their petition for the annullment of the will. From the judgment they appealed.
The first question to be considered is whether the will was confected in accordance with the provisions of LSA-Civil Code, Article 1578 which recites that it “must be dictated by the testator, and written by the notary as it is dictated”, appellants contending that Mr. Huber simply told the notary what he wanted and that-thereafter, without any further dictation, *845 the notary proceeded to write what was considered to be the testator’s wishes. From the evidence we find that on the assembling of the notary (Mr. George A. Dreyfous), the required three witnesses, and the testator, a general discussion respecting the confection of the will took place. Then the notary, after warning all persons to be quiet, prepared the preamble. Following its preparation, the testator declared his wishes to the notary, in the presence of the witnesses, and the official immediately recorded them. True, in the draft, the notary employed some language customarily contained in wills which did not constitute the exact words of the testator; however, it appears that he wrote the substance of what was dictated to him. In so doing he complied with the codal provision respecting dictation and writing as dictated. As was said in Rostrup v. Succession of Spicer, 183 La. 1087, 165 So. 307, 308, the requirement “does not mean that the notary must, in his draft of the will, use the exact words, the identical verbiage which fell from the lips of the testator in dictating the will. It is ‘identity of thoughts and not of words which the law requires.’ ” See also Succession of Saux, 46 La.Ann. 1423, 16 So. 364, and Renfrow v. McCain, 185 La. 135, 168 So. 753.
Without merit also is the charge that the will does not reflect the independent wishes of decedent in that it was executed under duress exerted upon him by Miss Huber. As correctly stated by the trial judge in his well considered written reasons for judgment, “The petitioners and-, plaintiffs have utterly failed in this attack? because the record is devoid of any testimony or -evidence as to any duress exerted upon the decedent, Albert Huber, by Mary Johanna Huber or by anyone else.”
The principal complaint made here by appellants seems to be that the trial judge should have 'sustained their alternative contention that the attempted disposition in favor of their sister is illegal because it impinges upon the legitime provided for them by law and its value greatly exceeds that of any services which such legatee might have rendered unto the testator. In this connection they take the position that, in passing upon the legality of the gift, any services rendered to the testator’s deceased wife and deceased daughter cannot be considered for the reasons that (1) claims respecting them should have been urged in their successions, and (2) in concluding the bequest the testator •made reference only to “services rendered to me”. And in taking this position, which for the sake of argument we shall assume to be -proper, appellants give recognition to the law that a remunerative donation (such as is the instant disposition) cannot be reduced below the estimated value of the-services rendered if the value of the services should be little inferior to that of the gift, not even i-f the donation infringes upon the legitime of forced' heirs. See LS A-Civil Code, Articles 1513 and 1525; Succession of Henry, 158 La. 516, 104 So. 310; Kiper v. Kiper, 214 La. 733, 38 So.2d 507.
*847 Decedent’s ^ interest in the real property which he bequeathed to Miss Hubei was, as before shown, appraised in the succession inventory at $5,843:75. Serving a: one of the appraisers was Mr. Allen H Generes, long prominently identified witf real estate and loan activities in the City of New Orleans, who also appeared as ai expert witness at the trial of this matter Testifying, he reaffirmed and fully justified his appraisement. The trial judge accepted it as being the true and correct value of the disputed interest as of the time o : Mr. Huber’s death. There appears- no good reason for our rejecting it.
Considering now the services rendered by Miss Huber to her father we find tha: she was born in 1890 and that thereafte • she lived continuously with her parents until their respective deaths, a great part of the time in the premises Nos. 4300-4303 Orleans Avenue. For some years prior to 1928 the household consisted of appellee, i sister named Hilda, and her father and mother, the three ladies of which shared the duties of housekeeping. In the latter year the sister was placed in a hospital because of a lingering illness (there she subsequently died), and the mother began tj develop numbness and stiffness in her limb:. The mother’s condition grew progressivel ? worse to the extent that in 1933 she became completely paralyzed, requiring constar t nursing and attention on the part of appellee. She died an invalid in 1941.
Beginning in 1928, therefore, the entire responsibility of keeping house for her father (as well as for her mother) devolved upon Miss Huber, and this included cooking, cleaning the house, washing, and sewing. At first her father’s demands were not overly exacting, for he was active and had gainful employment. A few years later, however, he began to have pleurisy attacks that necessitated medical attention and a general diet. His chronic illness became more serious in 1935, and he was then relieved of his employment, being first placed on the sick list and thereafter retired on a pension. From that time until his death in 1948 he was seldom able to leave his home; and, although not always confined to his bed, he needed more than ordinary attention. His physician testified that if Miss Huber had not attended him “ * * * he would have required the care of some one to take general care of him, whether it would be.a practical nurse or one that had had training or could handle him like a practical nurse.” Besides providing this general care Miss Huber performed many unusual services, such as sewing for him (making special -flannel garments that he needed) and, at nights, often changing his clothing. Moreover, during that long period of illness appellee attended to all of her father’s business matters, including the collecting of rents and making bank deposits.
Considering the foregoing facts, which are conclusively established by the evidence, the least that can be said is that Miss Huber kept house or served as a maid *849 for her father continuously from and after 1928 until the drafting of the will in 1945 (the district judge limited the proof to this date since the testator referred to services rendered in the past), a period of some 16 years or 5,840 days. Viewed in the light of this period' the gift to .Miss Huber, valued at $5,843.75, was equivalent to an average daily wage of approximately $1. Clearly the services to her father were worth this remuneration. Of course, from him she received food and lodging (both are usually furnished to a maid on 24 hour duty) and some clothes (she made most of those needed) . But we are satisfied that the -value of these items did not exceed the difference 'between the mentioned $1 and the usual daily wages of employed maids, the evidence disclosing that during a great part of such 16 year period they were being paid $3.50 for a regular work day. Our conclusion is that the value of the services in question was not inferior to that of the bequest.
 With reference to appellants’ opposition to the account filed by Miss Huber as testamentary executrix, the record shows that after the father’s death she continued to reside in that part of the premises Nos. 4300-4302 Orleans Avenue where she had lived with him. Because of the continuation of her residence there the contention is made that she should be compelled to account for the fair rental value of. the portion so occupied by her. The answer to the contention is that she holds possession of decedent’s entire 1%2 interest in such property as both his executrix and his legatee and, therefore, for it she owes nothing to his succession. See McNeely v. McNeely, 50 La.Ann. 823, 24 So. 338 and Succession of Brunies, 209 La. 629, 25 So. 287. Possibly she is indebted in some amount to appellants individually-inasmuch as each of them own a %2 interest which was inherited from the deceased mother ^nd deceased sister. But that is a matter determinable in some other proper proceeding, not by means of an opposition to the executrix’s account.
For the reasons assigned the judgment appealed from is affirmed.
FOURNET, C. J., absent.