AYRES, Judge.
This action was instituted by John Dixie Formby praying for the probate and ex *354 ecution of a will and testament of his mother, the decedent, Mrs. Mintie Formby. By petition in the probate proceeding, four of the remaining five children and heirs of decedent prayed that the purported will be declared null, void, and of no effect; and, alternatively, that the interest of John Dixie Formby, to whom the testator bequeathed all of the property of which she died possessed, be reduced to the disposable portion of of the testator’s property.
The property involved in this action consists of the fee title to an undivided interest in and to a described 80 acres of land situated in Webster Parish, Louisiana, together with an undivided J4 interest of the oil, gas, and other minerals thereto (20 mineral acres). The property is unitized and the two 40-acre tracts thereof participate in production from units underlying two producing wells.
Opponents’ attack upon the will is predicated upon the contentions: (1) that the bequest constituted an onerous donation which was not burdened with any charges imposed upon the donee; (2) that, if any charges were imposed upon the donee, they were not fulfilled; and (3) that the value of the property did not manifestly exceed that of the charges imposed on the donee as required under the provisions of LSA-C.C. Art. 1524.
After trial, the court sustained the validity of the will. The court construed the term “onerous donation” as a minor error intended to be a “remunerative donation,” and found that the value of the services rendered to the donor by the donee was sufficient to warrant and justify the legacy without reduction. In accordance with these findings, the demands of the opponents were rejected and the will decreed valid. From a judgment thus rendered and signed, opponents appealed.
The will, containing the aforesaid disposition, which is in question here, was executed in nuncupative form by public act January 31, 1925. Testator’s husband, John S. Formby, had died April 24, 1924. The testator died December 3, 1957, at the age of 95 years, eight months, and one day. The writing of the will thus preceded the testator’s death by almost 33 years. That portion of the will under attack reads as follows:
“ * * j give and bequeath all my property, both real and personal, and wherever situated to my son, John Dixie Formby, this being an onerous donation, he having provided for me during my lifetime, giving and granting him seizin, and making him executor, without bond.” (Emphasis supplied.)
The emphasized portion of the above quotation is the basis for opponents’ first contention, that the bequest, designated an onerous donation, was invalid because no charges or obligations were imposed upon the donee as required by the provisions of LSA-C.C. Art. 1523. As pointed out, the trial court construed the bequest as a remunerative donation, made to recompense the son for services rendered his mother, the testator, during her lifetime.
The characterization of a donation as an onerous one is not to be determined so much by the designation given by the testator but rather by her intent as may be determined from the language of the entire instrument. The first and cardinal rule among the “General Rules For The Interpretation Of Legacies,” in Section 7, Chapter 6, Title 2, Book 3 of the Revised Civil Code, is that the intention of the testator must be ascertained. LSA-C.C. Art. 1712. All other rules are only means to that end. Succession of Burnside, 35 La.Ann. 708; Kiper v. Kiper, 214 La. 733, 38 So.2d 507; Succession of Price, 202 La. 842, 13 So.2d 240; Succession of McBurney, 165 La. 357, 115 So. 618. To ascertain the intention of the testator, the language of a will is generally to be understood in its popular meaning and without attending so much to the niceties of the rules of grammar. And, as was stated i» *355 Succession of Price, supra [202 La. 842, 13 So.2d 244],
“To determine the intention of the testator the whole will is to be taken into consideration. Every word must be given effect if that can be done without defeating the general purpose of the will which is to be made effective in every reasonable method. Succession of Allen, 48 La.Ann. 1036, 20 So. 193, 55 Am.St.Rep. 295; Gueydan v. Montagne, 109 La. 38, 33 So. 61; Succession of Fath, 144 La. 463, 80 So. 659. No part of the testament should be rejected, except that which the law makes it necessary to reject. Succession of La Barre, 179 La. 45, 46, 153 So. 15.”
In this regard, LSA-C.C. Art. 1713 provides that
“A disposition must be understood in the sense in which it can have effect, rather than that in which it can have none.”
Whether the error in the confection of the will is attributable to the language characterizing the bequest as an onerous donation or in expressing, in the past tense, the purpose for which the bequest was made, is a matter of no significance or importance in view of the obvious intent of the testator. It clearly appears to have been established by the record that the mother relied upon her son, and she knew she must rely upon him for care, provision, and support during her lifetime. And, it would appear that it was of no material importance to her whether the bequest was made accompanied by charges upon the donee or whether the bequest was in the nature of a remunerative donation, as the services contemplated by her and the care which was assumed and discharged by the donee during her lifetime constituted the subject matter of prime importance to her.
 Opponents contend, however, inasmuch as a remunerative donation has, for its object and purpose, “to recompense for services rendered,” the services contemplated in the instant will were only such as were rendered preceding its date and subsequent to the death of the testator’s husband some seven months previously. In this regard, it is submitted that when a disposition is silent as to time, it refers to the time of the making of the will. Thus, LSA-C.C. Art. 1722 provides:
“A disposition, the terms of which express no time, neither past nor future, refers to the time of making the will. ^ ^ ^ 33
However, it has been held that that rule is controlling only when that fact cannot be determined from the language of the will itself or from the circumstances of the case. The rule is available only in aid of the fundamental purpose of ascertaining and carrying out the intention of the testator or when it cannot otherwise be determined what was the intention of the testator in that respect. However, the rule stated in LSA-C.C. Art. 1722 is never applicable to a universal or residuary legacy. Succession of Blakemore, 43 La.Ann. 845, 9 So. 496; Succession of Burnside, 35 La.Ann. 708; Succession of Marks, 35 La.Ann. 1054; Shaw v. York, 5 La.Ann. 146; Thomas v. Blair, 111 La. 678, 684, 35 So. 811; Shane & Withers v. Withers’ Legatees, 8 La. 489, 497. And, the pronouncement was made in Succession of Sauvage, 140 La. 619, 73 So. 702, 706, L.R.A.1917D, 426, that
“The general rule is that a testament speaks as of the date of the death of the testator. * *
See, also, Succession of McBurney, supra.
Therefore, construing the provisions of the aforesaid will and, in giving consideration to the obvious intent and purpose of the testator, the conclusion can only be reached that the testator intended, by the expression
“ * * * he having provided for me during my lifetime, * *
*356 to give the will a retrospective effect from and as of the future prospective date of her demise and, as of that date, to compensate her son for services rendered her during her lifetime. It would thus appear that the donation was remunerative in character rather than an onerous donation and that the intent of the testator was to compensate the donee for services rendered to the date of the donor’s death.
In the case of the Succession of Henry, 158 La. 516, 104 So. 310, 312, where the testatrix, in her will, bequeathed all her property to her son to recompense him for services rendered her, it was stated that the intention of the testatrix that the bequest made to her son should be a remunerative donation is beyond all question of cavil.
Opponents finally contend that the donation, even as a remunerative bequest, cannot exceed, and must be reduced to, the estimated value of the services performed. There is no question of the correctness of this asserted legal proposition. LSA-C.C. Art. 1513; Succession of Faust, 189 La. 417, 179 So. 583. In this connection, they assert the burden of proof is on the donee to establish the value of the services rendered. This claim is likewise well taken. The rule is, where a remunerative donation exceeds the disposable portion, the donee or legatee carries the burden of proof to prove the value of services performed. If established to be equal to or greater- than the bequest, no reduction can be made; otherwise it must be reduced to the estimated value of the services. Succession of Fox, 2 Rob. 292; Winbarg v. Winbarg, 177 La. 1071, 150 So. 21; Succession of Henry, 158 La. 516, 104 So. 310.
All these rules were tersely stated in Kiper v. Kiper, 214 La. 733, 38 So.2d 507, 510, as follows:
“The intention of the testator must be determined from the terms of the will, Article 1712, Revised Civil Code. In construing this article of the Civil Code, this Court has on numerous occasions pointed out that the intention of the testator expressed in his will must prevail over all other rules in the exposition of wills. The remunerative donation is designed to recompense for services rendered, Article 1523, Revised Civil Code. The remunerative donation is not a real donation if the value of the services is slightly inferior to the value of the gift, Article 1525, Revised Civil Code. The rules peculiar to donations inter vivos do not apply to remunerative donations except when the value of the object given exceeds by one-half that of the charges or of the services, Article 1526, Revised Civil Code. A remunerative donation cannot be reduced below the estimated value of the services rendered, Article 1513, Revised Civil Code.”
The position of the opponents as to this last contention is that the donee has not sustained the burden of proof imposed upon him in order to sustain the will as a remunerative donation or, if so, that the value of the services rendered is sufficient to deprive them of their legitime. While the value of the services may not be readily, easily or accurately translative into monetary terms, there is no doubt but that the services were most substantial.
For some unexplained reasons, no real affection existed between the four daughters, who are attacking their mother’s will, and the mother. Although they lived within a few miles of the mother, other than once or twice, when her death was imminent, did they visit their mother during the almost 33 years following their father’s death. This period covered a span of their mother’s life from an age of 62 to almost 96 years. On the contrary, the son, and donee under the will, is shown by the evidence to have been a devoted and dutiful child upon whom his mother unquestionably relied for the conduct of her affairs and for the provision of her needs.
*357 A natural and affectionate relationship was also existent between decedent and her daughter, Mrs. Jewell Formby Crabtree. These two lived together for IS years, or more, in a home acquired by the mother in Shongaloo which, however, was later sold to Mrs. Crabtree. Mrs. Crabtree not only did not join her sisters in opposing the probation of their mother’s will but strongly supported, by her testimony, the claims of her brother.
The many services performed by John Dixie Formby, such as providing medicines and groceries, the running of errands, and the giving of care and attention while, perhaps, not accurately translative in monetary terms as relates to value, were most substantial. The needs and the requirements of the aged mother had to be provided by someone. Neither of the four daughters who oppose her will claims to have supplied any of her needs. There were only two who administered to their mother and who supplied her with the necessities of life. Those were Mrs. Crabtree and John Dixie Formby. Mrs. Crabtree says it was he who provided for both of them.
The neighbors who testified were uni form in their expressions that the son was the one who gave the needed attention and supplied the provisions necessary for Mrs. Formby. No neighbor testified to the contrary. Nor does the fact that, for a period of approximately two years, Mrs. Formby received aid from the Louisiana State Department of Public Welfare in the sum of $10 per month or that she received funds from oil and gas leases which she divided equally among all children and herself detract from, or minimize, the value of the services rendered to her by her son. Nor do we consider it a matter of importance under the circumstances, where he had no knowledge of the existence of the will until after his mother’s death, that the son was unable to substantiate his claims by more positive evidence and render a more detailed account of his services. These services were rendered without any expectation of compensation therefor.
The trial court concluded that the value of the services rendered justified the bequest without reduction. Obviously, the trial judge found that the value of the services rendered equaled or exceeded the value of the property bequeathed. The legatee fixed a value of the services rendered at $250 per year. This is nowhere contradicted. From our review of the services rendered the mother, as heretofore pointed out, it would appear they are well worth that amount.
The position taken by the opponents in giving their testimony is that their mother was independent. The matter of her independence, we are convinced, was a fiction of her mind due to the sturdy life she lived. However, opponents, because of their lack of association with their mother, were not in position to know about her needs or to-know who supplied the necessities in relief of those needs. We are impressed that the property involved is ordinary hill land with a probable value of $35 per acre, not inclusive of its mineral value. The evidence shows that, while one of the opponents sold two mineral acres for $500 per acre, Mrs. Formby sold 20 mineral acres for $100 per acre, which she used in purchasing the residence in Shongaloo. From the evidence in the record, we are unable to conclude, as the trial court was obviously unable to conclude, that the value of the bequest manifestly exceeded the value of the services rendered. We find no firm basis upon which we could reasonably conclude the judgment appealed is manifestly erroneous.
Accordingly, for the reasons assigned, the judgment appealed is affirmed at opponents-appellants’ cost.
Affirmed.