McCALEB, Justice.
This litigation involves the validity of a disposition contained in a nuncupative will by public act dated January 21, 1925, executed by Mrs. Mintie Formby, who died on December 2, 1957, at the age of 95, leaving as sole heirs at law her six children (one son and five daughters), the issue of her marriage with John S. Formby, who died on April 24,1924. The will recites:
“I give and bequeath all my property, both real and personal, and wherever situated to my son, John Dixie Formby, this being an onerous donation, he having provided for me during my lifetime, giving and granting him seizin, and making him executor, without bond.”
When the testatrix’s son, John Dixie Formby, offered the will for registry and probate in the succession proceedings, four of his sisters appeared and challenged the validity of the bequest contending (1) that it constituted an onerous donation but im *158 posed no charges upon the donee; (2) that, if charges were imposed, they were not fulfilled by the donee and (3) that, in any event, the value of the property donated did not manifestly exceed the value of the charges imposed upon the donee, as prescribed by Article 1524 of our Civil Code. In the alternative, the opponents prayed for a reduction of the bequest, since it exceeded the testatrix’s disposable portion.
After a trial in the district court on these issues, the disposition of Mrs. Formby to her son was upheld as a remunerative donation and her daughters’ opposition was accordingly dismissed. An appeal was taken to the Court of Appeal, Second Circuit, where the ruling of the trial court was affirmed. See Succession of Formby, 127 So. 2d 352, 353. We granted certiorari.
Mrs. Formby’s estate consists solely of an undivided interest in 80 acres of land and a mineral interest in twenty acres, on which there are two producing oil wells. While the evidence is conflicting as to the total value of these interests, we think a conservative estimate of their worth is about $10,000.
It also clearly appears from the record that Mrs. Formby’s relations with the four daughters, who are contesting her will, were strained and incompatible during all the 30-odd years of her widowhood. Although they lived within close proximity of their mother, these daughters had virtually no contact with her during this period; indeed, it is shown that they deliberately avoided her though the reason for the animus which existed does not appear. On the other hand, Mrs. Formby had long entertained a deep-seated affection and admiration for her only son, who gave mutual response to her warmth with acts of kindness and attention. During the last 15 years of her life, Mrs. Formby shared the home she had purchased in Shongaloo, Louisiana with her other daughter, Mrs. Jewel Formby Crabtree, who had come to live with her during her old age. Shortly before her death, Mrs. Formby sold this property to Mrs. Crabtree for $1,000, or for one-half the price for which she acquired it. Mrs. Formby’s son lived nearby and made frequent visits to his mother. In addition, he ran errands for her, took her on shopping trips in his car, deposited her monthly oil royalty checks in the bank when he collected and deposited his own and made occasional gifts of homegrown vegetables, clothes and medicines.[1] This type of con *159 tact and attention given by the son to his mother began upon the death of his father and continued throughout her lifetime.
An examination of the will, the pertinent recitals of which we have quoted above, convinces us that the district judge and the Court of Appeal were correct in holding that the designation “this being an onerous donation” was an error chargeable to the attorney and notary to whom the will was dictated, as the other language used by Mrs. Formby makes it manifest that she did not intend to impose any charges on her donation of all of her property to her son. Indeed, when consideration is given to the fact of Mrs. Formby’s strained relation with her four daughters and her close affection for her son, the conclusion is inescapable that she wished to give him everything and exclude all her daughters from their legitimate portions. This she sought to accomplish by a remunerative donation, as found by the district court and Court of Appeal, for the will states that the testatrix’s reason for disposition of her entire estate to her son was because he had provided for her during her lifetime, the actual phraseology being “ * * * he having provided for me during my lifetime”.
In the district court, counsel for the opponents of the will, when confronted with. Dixie Formby’s claim that the disposition was a remunerative donation, objected to the admissibility of any testimony tending +o establish the value of services allegedly rendered by Formby to his mother after the date of the will. It was and is counsel’s position that, since a remunerative donation is a giving in payment for services rendered, no evidence of services furnished subsequent to the confection of the will should be considered in determining whether their value is substantially equal to the gift. This objection, similar to the one sustained by the district judge in Successions of Gilbert, 222 La. 840, 64 So.2d 192, was overruled and evidence heard and considered of alleged services extending from the death of Mrs. Formby’s husband in 1924 until the testatrix’s death in 1957, or for a period of over 33 years.
In the Court of Appeal, counsel for opponents reurged this point but it was rejected on the ground that the disposition was to be interpreted as of the date of the death of the testatrix in order to give prospective effect, as well as retrospective effect, to her intention, which was to compensate the donee for all services rendered to her during her lifetime.
This was error. A remunerative donation, as stated in Article 1523 of the Civil Code, is one having for its object the recompense of services rendered. It does not and cannot compensate for services to be rendered in futuro; in essence, it is a dation en paiement. See Succession of Henry, 158 La. 516, 104 So. 310.
The Articles dealing with remunerative donations (Articles 1523, 1525 and 1526) appear in a section of the Civil Code that is concerned, with inter vivos *160 donations only, but it is well settled in the jurisprudence that a remunerative donation can be made by testament, as well. Succession of Henry, supra; Kiper v. Kiper, 214 La. 733, 38 So.2d 507 and Successions of Gilbert, supra. However, when such a donation is made in a will, the intent of the testator is to be ascertained as of the date of the will, just as in the case of a donation inter vivos, and not when delivery is made to the donee.
Article 1525 of the Civil Code states that the remunerative donation is not a real donation when (as claimed in this case) the value of the services to be recompensed are but “ * * * little inferior to that of the gift”. Accordingly, in determining whether a disposition mortis causa is gratuitous, onerous or remunerative, it is essential to examine the intent of the donor at the time the bequest is made.
Article 1712 of the Code, while stating in substance that, in the interpretation of acts of last will, the principal function of the court is to endeavor to ascertain the intention of the testator, adds that this shall be done “ * * * without departing, however, from the proper signification of the terms of the testament”. And Article 1720 declares “A disposition, couched in terms present and past, does not extend to that which comes afterwards.”
In the instant case, the disposition of the testatrix’s entire estate to her son is stated to be in remuneration or payment for “having provided for me during my lifetime”. Therefore, applying the canons of construction set forth in Articles 1712 and 1720 of the Code, the disposition is in remuneration for a past act and must be limited to services rendered by the donee prior and up to the date of the confection of the donation and does not extend to services rendered thereafter.
This exact question was considered in Delaureal v. Roguet’s Succession, 177 La. 815, 149 So. 464. There the plaintiff, a physician, sued on a quantum meruit for services rendered Reverend Roguet during his last illness. The suit was met with a plea of estoppel based upon plaintiff’s acceptance of a legacy bequeathed to him in the will of the deceased in the form of a remunerative donation of $1,000 for his years of medical service and close devoted attention, the will being dated August 15, 1931. The services for which Dr. Delaureal sued, however, were performed after the date on which the will was confected and, for this reason, the court rejected the plea of estoppel, declaring that the disposition was to be interpreted as of the date of the will and not at the death of the testator.
It is to be noted, however, that in one of our more recent decisions, Kiper v. Kiper, 214 La. 733, 38 So.2d 507, the Court, in considering the value of the services rendered by the donee to the decedent under a remunerative donation mortis causa, took into account those services rendered subsequent to the execution of the will, as well as those rendered prior thereto. The services were performed from 1936 until the death of the testator in 1944; the will was written in 1941 and the value of the property donated was $4,000. The services were fixed at $1.31 per day for the entire eight years elapsing between the date of their beginning and the death of the decedent. Evidently the question here presented was not raised as it was not discussed by the Court in its holding that the services over the entire period were commensurate in value with the donation. It is to be assumed that, had the Delaureal case been directed to our attention in the Kiper case, the donation would have been reduced to the value of the services rendered by the donee up to the date on which the remunerative gift was made, conform-ably with the limitation set forth in Article 1513 of the Civil Code, if the value of the services were in excess of the disposable portion.
In the case at bar, the services rendered by the donee to his mother over a period of nine months, from the date of his father’s death until the date the will was written, could not exceed $250 in value, according to *161 his own estimate. But, even if we would consider the services rendered by him during the 33 years between his father’s death and his mother’s death, we doubt that the remunerative character of the donation could be sustained for another reason, that is, because the t}rpe of services rendered are not of such a nature as to support the bequest.
There was nothing extraordinary about the services rendered by Dixie Formby to his mother. They were such as any dutiful son would render to an ageing parent and they were not performed under circumstances that could in any sense give rise to the belief that compensation should be forthcoming and, indeed, the son states that no services were rendered for which compensation was expected. These were not only such services that would be presumed gratuitous because of the relationship of the parties (Succession of Daste, 125 La. 657, 51 So. 677, 29 L.R.A.,N.S., 297; Succession of Templeman, 134 La. 798, 64 So. 718 and Muse v. Muse, 215 La. 238, 40 So.2d 21) but were such services that would be regarded as gratuitous in the absence of any family relationship. Since the services were of a gratuitous nature, the only thing that Mrs. Formby owed her son was gratitude and, if gratitude moved her to make a bequest on his behalf, the source of the bequest would be her own liberality and not a duty to compensate him.
The proposition that ordinary services rendered by a child to a parent are not com-pensable in the sense that they cannot be the basis for a remunerative donation, finds support in Succession of Waechter, 131 La. 505, 59 So. 918, 919. There, the legacy from father to son purported to be for services rendered. However, the Court found that “ * * * he rendered such services as his father called on him to render, and as he found time to render, but none for which he expected, or could reasonably have demanded, compensation. We are therefore of the opinion that the legacy of $200 was intended mainly, if not wholly, as a gratuity, and hence precludes the legatee from receiving a commission as executor.”
In the Henry, Kiper and Gilbert cases the services constituted complete care and nursing of a sick and ageing parent. These services are such for which payment would be normally due. They are not such services as are ordinarily rendered gratuitously and, if a person outside the family performs them, he would have an action against the succession on a quantum meruit. Camfrancq v. Pilie, 1 La.Ann. 197; Succession of Dugas, 215 La. 13, 39 So.2d 750. However, where there is a close relationship, such services are presumed to be given gratuitously and there can be no recovery. Succession of Daste, supra. On the other hand, the parent can voluntarily make recompense for the services by disposition mortis causa which will not be subj ect to reduction by the forced heirs if the value of the services are equal to the donation. Succession of Henry, supra. But Dixie Formby did not keep or provide for his mother in her old age. No doubt he was kind and attentive to her while the four opponents ignored her. This is such behavior as might engender a desire to disinherit the daughters and to give all the property to the son, but it is not such as to create a duty to make recompense for services. The faithfulness of the son might give rise to gratitude and provide the motive for the gift; but, then, such a motive arises from the desire to confer a benefit and not from a duty to repay. Consequently, the gift is a pure gratuity.
Article 1523 recognizes three kinds of donations; gratuitous, onerous, and remunerative. The gratuitous donation is a pure donation in its motive, which is one of liberality. The latter two are mixed in motive. They arise only in part from a feeling of liberality while, in its other aspect, an onerous donation has as its object the imposition upon the donee of some condition, and the remunerative donation has, in part, as its object the discharge of a duty to repay the donee. Whether that duty must have legal effect apart from being a basis for a remunerative donation need not be decided here. Some authorities believe that *162 the obligation must have independent legal status (1 Domat, The Civil Law (Strahan transí.) No. 921-22■; 11 Aubry et Rau, Droit civil francaise No. 702 (5th Ed. 1917)), while others believe a moral obligation can be the basis for a remunerative donation (Smith, A Refresher Course in Cause, 12 La.L.Rev. 2, 18, 19). Suffice it to say that, to be remunerative, a donation must be based on some obligation to make recompense, either moral, natural or civil. Services freely rendered, and of such nature that compensation could not reasonably be expected to give rise only to a moral obligation of gratitude and gratitude alone cannot be the basis for a remuneration. To hold otherwise would have the effect of permitting disinheritance without the cause or form required by law. See Arts. 1617-1621 of the Civil Code. A parent would be able to give all his property to the child he preferred and who had rendered to him more filial service and attention than the other children, if gratitude for favors rendered is allowed to serve as a basis for a recompense for services. There was no recognizable duty on the part of Mrs. Formby to pay her son for his attention to her. The son performed these things freely and gratuitously and earned only her gratitude.
We regard the bequest herein to be purely gratuitous in fact and law and therefore it impinges on the legitime of the other forced heirs. Otherwise, it is valid and is subject only to reduction to the quantum allowed by law. Art. 1502 of the Civil Code.
For the reasons assigned, the judgment of the District Court, which was approved by the Court of Appeal, is affirmed insofar as it upholds the validity of the will of the deceased. In other respects, the judgment is annulled and set aside and it is now ordered that there be judgment herein in favor of opponents on their alternative demand reducing the bequest of the testatrix to John Dixie Formby to the disposable portion which is an undivided one-third interest in the property left by the deceased. All costs are to be paid by the succession.
HAMITER, J., dissents, being of the opinion that the judgment of the Court of Appeal is correct.
HAWTHORNE and HAMLIN, JJ., dissent with written reasons.

. This is shown by the evidence of Dixie Formby, who estimated the value of the services he rendered his mother during the 33 years of her widowhood at $250 annually. His statement as to the nature of his services is corroborated by several neighbors and his sister, Mrs. Crabtree. The latter, testifying on his behalf, gives an approximation of the services performed by her brother as follows:
“Q. Now, other than coming to town once a year and paying the taxes, going to the bank once a month or whatever was necessary to put her check in the bank, or whatever money she might have, do her banking, and going down to the store and bringing some groceries home, what else did Mr. Dixie Formby do for liis mother? A. He did come to see her.
“Q. Came to see her? A. Yes, he did.
“Q. Visited her? A. He visited her, is correct, and him going—
“Q. I mean, as far as any services are concerned ? A. And him a-going to town and bringing groceries was a load off me and I thanked him for it.
“Q. Yes, I’m sure it helped you. A. That’s right.
“Q. But as for being — helping out in that respect — A. That’s right.
“Q. How far did you live from the store? A. Oh, I didn’t live but a little piece, a quarter, half a quarter, or something like that.
“Q. How many times, during the past Fifteen years, per week, would Mr. Form-by bring your groceries out? A. Oh, I don’t know, not much.
“Q. Just — I mean, about average; I know you wouldn’t know exactly? A. No.
“Q. Once or twice a week, would it be that much? A. No, it wasn’t that often.
“Q. Just once or twice a month? A. Yes, something like that.
“Q. Probably average once or twice a month? A. Something like that.
“Q. The rest of the time you got the groceries yourself or caught a ride or *159 somebody helped you? A. Or they delivered them.
“Q. Or they delivered them? A. Thats right, thats correct.
*****
“Q. Go to the bank once a month or something of that effect? A. Once in awhile; and probably she’d have him to go see about something else; but there wasn’t much business to tend to.
“Q. That is what I am getting at. Actually, there wasn’t anything other than come to town once a year and pay the taxes — - A. Yeah.
“Q. —and go to the bank once a month — A. Thats right.
“Q. And put that check in. The farm wasn’t rented, and actually— A. And he come in—
“Q. Thats what the business consisted of, isn’t it? A. Yes, there wasn’t too much business to tend to, unless he had to see after that gravel, and see after the timber—
“Q. He got his proportionate part of what the leases brought and what the gravel brought and what the timber brought, didn’t he? A. Yeah. Yeah. Sure did * * *